EVERETT S. WOOD & others *vs.* BUILDING COMMISSIONER OF THE CITY OF BOSTON & another.

Suffolk.     March 12, 1926. — May 29, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Zoning. Municipal Corporations*, Officers and agents. *Mandamus. Boston.*

Under the provisions of the zoning law of Boston, St. 1924, c. 488, §§ 10, 11, 22, the owner of land having two dwelling houses thereon is prohibited from erecting an additional house upon his land, so located as to reduce the spaces at the side and at the rear of the houses already there to less than the requirements of the statute.

The building commissioner of Boston, upon being informed seasonably by owners of land adjoining land, for the erection of a house upon which the commissioner had granted a permit, and by other residents in the neighborhood, that the house to be erected would violate the provisions of the zoning act, St. 1924, c. 488, is required by § 18 of the act to take immediate steps to enforce the provisions of the statutes; and, if he fails to do so, such persons are persons aggrieved within the meaning of § 18 and may establish their rights by a petition for a writ of mandamus.

PETITION, filed in the Supreme Judicial Court of the county of Suffolk on March 14, 1925, for a writ of mandamus requiring the respondent to revoke a permit which he had issued to Henry A. Vincent for a building on Albion Street in that part of Boston formerly Hyde Park, and to apply for an injunction in the Supreme Judicial Court for the county of Suffolk to restrain the construction of said new building by said Henry A. Vincent and immediately to take such other steps as may be necessary to enforce the provisions of the zoning act as they apply to such building.

A motion by Henry A. Vincent for leave to intervene was allowed by *Braley*, J.

The suit was referred to an auditor.    It appeared that the petitioners included owners of land abutting upon the land of Vincent upon both sides and also residents in the immediate neighborhood.    The auditor found, "pursuant to an agreement of the parties, that the petitioners notified the respondent Mahoney in writing of facts which constituted well founded information in writing that the provisions of the zoning law were being violated by Vincent, if the court shall rule on the facts herein set forth that Vincent's new house has been and is being erected in violation of the zoning law, otherwise not . . . .

"Although these questions were not raised by respondents in their answers, or during the hearings before me, I find, if I have authority to do so, that petitioners have not been guilty of laches, but on the contrary that they have acted with diligence and promptitude in the pursuit of their rights under the zoning law; that Vincent has proceeded with the erection of the new house contrary to the petitioners' express request, made as soon as building operations had started, that he suspend work until the question of whether or not the new house violated the zoning law could be determined by the court, and with full knowledge at all times during its erection that the petitioners claimed that its erection was contrary to the zoning law, and that they would do all they could legally to prevent its erection; that the petitioners have not by word or conduct misled Vincent or caused him to do anything he otherwise would not have done; and, hence, that from the beginning Vincent has prosecuted the work entirely at his own risk."

Other material facts found by the auditor are stated in the opinion.    The closing paragraph of his report was as follows:

"In conclusion it may be helpful to the court if I state what I conceive to be the gist of the case in a few words. I think the only question for the court to determine is whether or not the new house as it is now constructed is in violation of the zoning law.    The answer to that question depends

upon a construction of the zoning law. If the zoning law applies only to structures erected after its enactment, there has been no violation of the zoning law unless the law is to take cognizance of. the trifling infringement of the side yard provision of the statute. If the zoning law applies to structures existing at the time of its enactment, then the new house violates the zoning law in that it has not the required left side yard, right side yard (if the trifling variance above referred to is important), rear yard (if the Milton Ave. lot must be drawn as contended by the petitioners), and lot area."

The suit was heard by *Wait,* J., who found the facts as stated in the auditor's report and reported the suit to the full court for determination.

*A. E. Whittemore,* for the petitioners.

*D. W. Murray & S. E. Duffin,* for the intervenor, *& L. Schwartz,* Assistant Corporation Counsel, for the respondent, submitted a brief.

BRALEY, J. The intervenor Henry A. Vincent made application to the commissioner on October 27, 1924, for a permit to build a third class building on his land No. 18 Albion Street in that part of Boston formerly Hyde Park, and filed therewith plans showing its construction. While a building permit was issued, which the petitioners concede was in accordance with the building laws of the city, they contend that the erection of the house was in violation of the zoning law. St. 1924, c. 488.

The rectangular parcel of land on which the house stands extends from Albion Street to Milton Avenue, and on June 5, 1924, when the act was approved, there were buildings on three of the four corners of the premises. The entire parcel and the buildings thereon were owned by Vincent. A plan is made part of the record. It is found by the single justice, following the auditor's report, that the lines, figures, words and drawings on the plan constitute a correct statement and representation of the size, shape and dimensions and distances between various points and lines of the land and the various structures and parts. As shown by the plan, there were two houses in diagonally opposite corners, one facing

Albion Street and number 16 thereon, the other with a garage beside it facing Milton Avenue. The fourth corner was vacant, and in this area, fronting on Albion Street and near the house standing on the parcel also facing Albion Street, Vincent began the new house early in December, 1924.

The zoning act provides in § 11, ". . . There shall be behind every building . . . a rear yard . . . . There shall be a side yard on each side of every building . . . ", and it is found that there is insufficient space between the house No. 16 Albion Street and the new house to provide the required side yard for No. 16, and for the new house. The importance of the provisions which reserve as open spaces portions of the land surrounding dwelling houses for rear and side yards, is manifest.

The question for decision, therefore, is whether such provisions are applicable to land adjacent to houses which were standing at the date of the enactment. If they are, open spaces were reserved for that class of houses.

The Legislature had power to enact the statute. *Opinion of the Justices,* 234 Mass. 597. *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52. If the use of land for the erection of dwelling houses could be restricted after its passage such use could be restricted as to houses in existence at the date of the statute. The property was subject to the police power, and the restrictions imposed were equally burdensome. *Chase* v. *Proprietors of Revere House,* 232 Mass. 88. *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73. It is provided by § 22, that "In interpreting and applying the provisions of this act they shall be held to be the minimum requirements for the protection of health, safety, convenience and welfare of the inhabitants of the city of Boston," and in the last paragraph of § 10 it is declared, that " No lot shall be so reduced that the yards, courts or other spaces shall be smaller than prescribed in this act. No yard, court or other open space shall at any time be counted as required open space for more than one building." The only exceptions from the operation of the act appear in § 23: "Nothing in this act shall require any change in the plans, construction or intended use of a building

for which a building permit has heretofore been issued, and the construction of which shall have been diligently prosecuted within six months of the date of such permit, and the ground story framework of which, including the second tier of beams, shall have been completed within such six months, and which entire building shall be completed according to such plans as filed within two years from the date this act takes effect."

If the side yard and rear yard lines are drawn as shown in red on the plan, it is impossible to allocate to the new house a lot having the required area and rear yard. The permit was improvidently granted, and the new house by its size and location violates the law. It was the duty of the building commissioner under § 18, upon being seasonably notified in writing by the petitioners of the violation, to take immediate steps to enforce the provisions of the statute. The petitioners by his failure to act are persons aggrieved within the meaning of this section, and may establish their rights by the present action. *Ayer* v. *Commissioner on Height of Buildings in Boston,* 242 Mass. 30. *O'Brien* v. *Turner,* 255 Mass. 84.

A writ of mandamus accordingly is to issue commanding the commissioner forthwith to revoke the permit, and to institute and prosecute appropriate proceedings to cause the removal of the house.

*So ordered.*