DONALD C. WILLIAMS & another *vs.* INSPECTOR OF
BUILDINGS OF BELMONT & others.

Middlesex.    April 5, 1960. — June 9, 1960.

Present: SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Zoning.  Tennis Court.  Building Laws.  Mandamus.  Building Inspector.
Law or Fact.  Words, "Structure."*

Mandamus was the appropriate remedy for a landowner in a town to
require its inspector of buildings to "forbid and prevent" the construc-
tion of a tennis court on abutting land in alleged violation of the build-
ing and zoning by-laws of the town where the inspector had refused to
stop the construction and there had been no "order or decision" in writ-
ing or record on which to base an appeal by the petitioner to the board
of appeals under the by-laws or under G. L. c. 40A, § 13.   [189–190]

A tennis court with its fences and its net posts as matter of law was not
a "structure" within the meaning of that term in a zoning by-law pro-
viding that in single residence districts "No building or structure shall
be erected, altered or used" for other than designated purposes.   [190–
191]

Whether a tennis court was a permitted "customary incidental" use of
single residence premises in a town within its zoning by-law was a
question of fact.   [191–192]

A tennis court with its fences as matter of law was not a structure within
a building by-law of a town which was adopted prior to the definition
of "structure" inserted in G. L. c. 143, § 1, by St. 1945, c. 480, and
which required a permit for the erection of a "building or part thereof
. . . platform or flooring to be used for standing or seating purposes,
or other structures of any kind."   [192–193]

Where the petitioner in a mandamus proceeding to prevent construction
of a tennis court in alleged violation of the zoning and building by-laws
of the town contended that the building by-law required a building per-
mit to erect the fences of the tennis court, but sought to compel an appli-
cation for a permit solely to secure a decision by the inspector of build-
ings, appealable to the board of appeals, as to whether the tennis court
was permissible under the zoning by-law, and this court adjudicated that
it was permissible under the zoning by-law, an order for judgment dis-
missing the petition should be affirmed even if a permit for erection of
the fences was required by the building by-law.   [193–194]

PETITION for a writ of mandamus filed in the Superior
Court on December 23, 1958.

The case was heard by *DeSaulnier, J.*

*Charles F. Choate,* for the petitioners.

*Earle C. Parks,* Town Counsel, for the respondent inspector of buildings of Belmont.

*Alfred Gardner,* for the respondents Barnes.

WHITTEMORE, J. The petitioners (Williams) reside at 150 Prospect Street in Belmont. In December, 1958, they sought a writ of mandamus to require the inspector of buildings of the town to "forbid and prevent" the construction of a tennis court on land of Henrietta N. Barnes between the Williams residence and the Barnes residence at 164 Prospect Street for the reasons that no building permit had been issued as required by the building by-law for a building or structure and that the construction of the tennis court violated the zoning by-law. Mrs. Barnes and Benjamin A. Barnes, her husband, were allowed to intervene. The judge in the Superior Court on May 15, 1959, ordered that the petition be dismissed, ruling that the tennis court was not a building or structure and that it is a use customarily incidental to that of a single family detached dwelling. In support of their appeal the petitioners contend that it should be ruled that a tennis court is a structure for which a building permit is required, that mandamus lies to compel the inspector of buildings to require an application for a permit, so that, by an appeal from his decision granting or denying such application, the board of appeals of the town, as the appropriate tribunal for initial action, may determine whether a tennis court is a customarily incidental accessory use under the zoning by-law.

The inspector of buildings testified that the petitioners had requested him to stop the work at 164 Prospect Street and he had refused. The contract for the construction of the tennis court included a ten foot high cedar picket fence along the street line, extending an existing fence in front of the Barnes property, a ten foot high fox-wire fence on the other three sides supported by a wooden framework, and the net posts.

1. The petitioners rightly contend that the petition for a writ of mandamus was properly brought. *Atherton* v.

*Selectmen of Bourne,* 337 Mass. 250, 258–259. See *Dodge v. Inspector of Bldgs. of Newburyport,* 340 Mass. 382, 385–386. So far as appears, no writing exists to establish the content of any "order or decision" from which the petitioners might have appealed under the Belmont by-laws[1] or under G. L. c. 40A, § 13. There is no record. It may be thought somewhat arbitrary that questions of enforcement which will come before the local board of appeals if a permit is granted or denied will not reach the board if no permit is sought and the enforcing officer does not act. This, however, is not a necessary state of affairs. A provision in a by-law or ordinance for the filing of a request for enforcement and for formal action on the request could, it would seem, operate to cause an appealable decision.

2. The zoning by-law adopted January 19, 1925, has not excluded tennis courts from the single residence districts.

Section 3 (a) of the by-law,[2] unlike many zoning regulations, does not regulate the use of land, except so far as it has a building or structure thereon. Therefore to conclude that a tennis court is excluded, it would be necessary to rule

---

[1] The building by-law (§ 2–6) provides that "[a]ny applicant for a permit whose application has been refused . . . or any person who has been ordered . . . to incur expense . . . or any person dissatisfied with the decision of the inspector of buildings on a matter left by this code to his approval or discretion, may appeal therefrom . . . within ten days from the date of said refusal, order, or decision. In case . . . any persons . . . owning land located within two hundred feet of such proposed building or other structure, is dissatisfied with any order or decision . . . and files with said inspector an objection thereto in writing, the matter shall be referred at once to the board . . . ." The zoning by-law (§ 9 [a]) provides that the inspector shall enforce it "in manner and with powers similar to these [*sic*] practiced or provided under" the building by-law. Under both by-laws the board of selectmen is the board of appeals. The zoning by-law (§ 9 [a]) also provides that "[n]o permit shall be issued for the erection, alteration or moving any building or part thereof, plans and intended use for which are not in conformity with the provisions of this by-law."

[2] "Section 3 . . . In a single residence district. (a) No building or structure shall be erected, altered or used for any other purpose than the following, including customary incidental uses: (1) Single-family detached dwelling; (2) Clubhouse, except . . . ; (3) Lodging or boarding house . . . [with limitation]; (4) Educational or religious use; (5) Farm, garden, nursery or greenhouse; (6) Municipal recreational use; (7) Building for accessory use customarily incident . . . [not including garage for more than two cars, or stable for more than two horses or cows]; (8) . . . [Larger garages, stables and] a philanthropic use, cemetery, hospital or sanitarium with buildings for customary incidental uses . . . [but only with ruling of the board of appeals] that the building and use will not be detrimental or injurious to the neighborhood."

that it comes within the term "structure" and we rule that it does not. It is true that a tennis court is in a sense "something constructed or built" (dictionary definition) but we think that in a zoning regulation, at least in the absence of a statement of broader intent, it does not include a solid underground construction for the purpose of furnishing a smooth and hard surface which will be unaffected by the weather. The work in making a tennis court is like that involved in making a driveway or road. The wire fence or ball guard and the net posts are incidents of the tennis court and are no more structures within the zoning law than is the court. Plainly the zoning by-law does not regulate the street boundary fence as a structure or otherwise.

We are disinclined to stretch the zoning by-law meaning of "structure" in an attempt to extend the meaning of § 3 (a) to include certain uses of land. Some of the eight subclauses of the section suggest that regulation of land use is intended. If so, an amendment will be required adequately to declare such intent. In other sections of the by-law the use of land is expressly regulated. In § 2 (f) it is provided that "No lot, building or structure of any kind within the town shall be erected or used for . . . [specified offensive or injurious purposes]." Section 2 (g) reads, "No land within the town shall be used as a sand or gravel pit . . . ." The words of the by-law, as in the case of the construction of a statute, must "be construed according to their natural import in common and approved usage." *Commissioners of Pub. Works* v. *Cities Serv. Oil Co.* 308 Mass. 349, 360. *Foster* v. *Mayor of Beverly,* 315 Mass. 567, 569–570. *Desmarais* v. *Standard Acc. Ins. Co.* 331 Mass. 199, 202. *Kurz* v. *Board of Appeals of No. Reading, ante,* 110, 112.

3. In view of the foregoing (point 2) it is unnecessary to review the ruling that a tennis court was a permitted incidental use. But it should be noted that whether such a use is customary and incidental on a residence lot in Belmont is a question of fact. It could not be ruled that a tennis court

as a matter of law is not in such category. See *Seaman* v. *Zoning Bd. of Appeals of Holliston,* 340 Mass. 488, 490. There was testimony that there were other tennis courts adjacent to private homes in Belmont, used incidentally to the dwelling houses, that there was one such within 300 yards of the petitioners' lot, and that no applications for permits to build tennis courts had been filed with the inspector since 1954 when he took office. On this evidence, even if the tennis court had been a structure, it could not have been ruled that the petitioners had shown a violation of the zoning by-law.

4. There was no error in the ruling that the tennis court, apart from its incidental fence, is not a building or structure under the Belmont building by-law. The petitioners admit that it is "perhaps not a building." The building by-law (§ 1-1 [a]) calls for permits for the erection of a "building or part thereof, wall, fire escape, platform or flooring to be used for standing or seating purposes, or other structures of any kind . . . ." The specification of "platform or flooring to be used for standing or seating purposes" speaks against the inclusion in "structure" of the tennis court as does the primary intent of the building by-law to assure safety in construction.

5. The petitioners urge, however, that the fences are structures for purposes of the building by-law, particularly in view of the definition of structure inserted in G. L. c. 143, § 1, by St. 1945, c. 480.[1] This definition was not in the statute when the by-law was adopted in 1931. See G. L. (1921) c. 143, § 1; Ter. Ed. c. 143, § 1. The by-law did not therefore by implication use "structure" in the sense of the present statutory definition. Chapter 143 is permissive in its grant of power to municipalities. We would be disinclined, particularly in the absence of a showing of a local practice to require permits for such fences (*Hecht Co.* v.

---

[1] " 'Structure', a combination of materials assembled at a fixed location to give support or shelter, such as a building, framework, retaining wall, tent, reviewing stand, platform, bin, fence, sign, flagpole, mast for radio antenna or the like. The word 'structure' shall be construed, where the context allows, as though followed by the words 'or part or parts thereof.' "

*McLaughlin,* 214 F. 2d 212, 214 [D. C. Cir.], *Wright* v. *Wardman,* 5 F. 2d 380, 381 [D. C. Cir.]; see *Collector of Taxes of Boston* v. *Cigarette Serv. Co. Inc.* 325 Mass. 162, 167; compare *Boston* v. *Merchants Natl. Bank,* 338 Mass. 245, 249), to construe this by-law to provide that the building inspector must require a permit for the construction of a street boundary fence and a wire tennis court enclosure. Another consideration, next to be stated, makes it unnecessary to rule on that incidental part of the construction of the tennis court.

6. In the present aspect of the case, even if a building permit were required for the fences, no judgment should enter to force the inspector to require a permit for their construction.

The petitioners' brief establishes that the petitioners assert no interest whatever in the requirement of a building permit which would be supported or advanced by such a judgment. The petitioners do not assert the right to require that the building by-law be enforced in the usual aspect of safety of structures. See, for the general right of citizens to require that laws, ordinances and by-laws be enforced, *Concord* v. *Attorney Gen.* 336 Mass. 17, 27; *Sunderland* v. *Building Inspector of No. Andover,* 328 Mass. 638, 640; *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165, 169.

The only interest of the petitioners in securing a ruling in respect of the building by-law is to bring about a determination by the board of appeals that the tennis court is not permitted under the zoning by-law. The petitioners are explicit in their brief. They say: "If the respondents Barnes are forced back into the local administrative procedure by having to file an application for a building permit, the question of whether the tennis court is permissible under the zoning by-law can be appropriately determined. . . . The order for judgment . . . should be reversed because the proposed tennis court is a 'structure' for the construction of which an application for a building permit should have been filed. . . . The question of whether a

tennis court is an 'accessory use' . . . should be for the local board of appeals to decide on an appeal from the granting or denying of an application . . . ."

The issue of the zoning by-law status of the tennis court has now been adjudicated in this case and against the petitioners' contention (point 2, *supra*). The adjudication is final and res adjudicata of that issue between the parties.

*Order for judgment affirmed.*