John C. Van Arsdale vs. Town of Provincetown & others
(and a companion case[1]).

Barnstable.   February 7, 1962. — April 10, 1962.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, & Kirk, JJ.

Zoning, Multiple dwelling, Setback, Appendage of building, Accessory use.
   Building.   Words, "Two family dwellings."

A provision of a town's zoning by-law permitting "two family dwellings,"
   construed in the light of other provisions, contemplated separate struc-
   tures each accommodating two families, so that a single structure de-
   signed for four families in four apartments would be a four family
   dwelling violative of the by-law even though the apartments were ar-
   ranged two on each side of a solid, substantial masonry wall extending
   from cellar to roof.   [147–148]
Properly construed, certain provisions of a town's zoning by-law respecting
   a setback gave a lot owner an option between a specified distance in feet
   and the average of the setbacks on the adjoining lots on each side, and
   did not require him to conform to the average if that were greater than
   the specified distance.   [149–150]
A "deck" and an associated screen, removable for winter storage, placed
   between the dwelling on a harbor lot and a stairway leading down to the
   beach would not be parts of the dwelling so as to be subject to the set-
   back from the water line required by the local zoning by-law for the
   dwelling itself, even though one side of the "deck" were placed on the
   foundation of the dwelling and the screen, resting on the "deck," were
   attached to the dwelling.   [150–151]

Petitions for writs of mandamus filed in the Superior
Court on October 14, 1960, and October 19, 1960.

The cases were heard by Meagher, J.

James W. Kelleher, for the petitioners.

S. Osborn Ball, for the respondents Ray Martin Wells
and others.

Whittemore, J.   The appellants John C. Van Arsdale
and Alfred T. Manacher, by separate petitions in the Supe-
rior Court, sought writs of mandamus to compel the re-
spondent Fernando Gonsalves, as building inspector of the

1 The companion case is by Alfred T. Manacher against the same defendants.

town of Provincetown (the inspector), to revoke a building permit issued to the respondent Ray Martin Wells for construction of two structures on Wells's lot on the southeast, harbor, side of Commercial Street lying between the northeasterly side line of Manacher's property and a ten foot strip of vacant land which runs from Commercial Street to the harbor and abuts Van Arsdale's property along the latter's southwesterly side line. Other respondents are alleged to have been engaged by Wells to construct the buildings.

The principal issue is whether the southerly of the two proposed structures is a dwelling containing four apartments and hence violative of Section II G 2 of the zoning by-law, or, on the contrary, because of a dividing wall, is to be deemed two dwellings, or zoning law units, of two apartments each, and hence a permitted structure. The petitioners also contend that the structure would violate setback restrictions. The judge in the Superior Court found no violation and ordered the petitions dismissed.

1. The applicable use provision of the by-law reads: "Section II. Residential District Uses  In Residential Districts no building or premises shall be erected, altered or used for any purpose except: . . . Class G  Residential District . . .  2.  Single or two family dwellings not exceeding three per lot."

The northerly of the two proposed structures for Wells's lot is designed to accommodate two families in separate apartments. The southerly structure, with its long axis parallel to Commercial Street, is designed for four families in four apartments, two each on either side of a solid eight inch thick masonry wall extending from cellar to roof.

In Section II of the by-law, as we construe it, "two family dwellings" are separate structures or buildings to be occupied by two families. A building to be occupied by four families would be a four family dwelling. The proposed four apartment structure is one building or zoning law dwelling for the purposes of this section. The architect's plan so describes it ("South Building") and in com-

mon sense that is what it is. Of course, as the respondents contend, for some purposes a building is no less that because it shares a party wall with another building. The zoning by-law recognizes this in "Section VI. Area Regulations . . . Class R Commercial Districts" in providing under the designation of "Side Yards" the requirement "5 feet or a fireproof party wall." But Section II G, by reasonable implication, is specifying separated structures. No apparent purpose of that section is served by the presence or absence of a solid wall in the interior of a building. With or without such a wall the North Building and the South Building each has the same outward appearance, and brings the same number of families under the same roof. The North Building, as the petitioners point out, would be no less what it is for purposes of Section II if the two apartments were separated by a solid vertical wall but if this change were made there would be, on the respondents' construction of Section II, four dwellings on the lot and thus a violation of the by-law. We notice that in the Section II "Class W Residential District" the permitted uses include: "2. Single or two family dwellings exceeding three per lot; 3. Three or more family dwellings." This emphasizes for the purposes of Section II the concept of each dwelling as a separate structure.

The respondents object, however, that the provision of the by-law (Section VI) which specifies the depth of front, rear, and side yards does not apply to spaces between buildings on the same lot, so that, without violating that provision, dwellings under Section II could be built with no space between them. Even if that were so, it would not follow that Section II must be construed to contemplate no space between permitted buildings.

If no minimum distance is specified, Section II nevertheless must be reasonably construed. We assume no one would build two houses so close together that access could not be had to the adjacent exterior walls. In any event such a case is not presented, and we need not speculate as to the status of two houses so placed or of houses attached

by some overlap of walls at one corner, both being possibilities which have been referred to by the respondents.

We refrain from any construction of this by-law not essential to this case. Its provisions are sketchy at best, and we conclude that amendment, if it has not occurred, is in contemplation. We note, however, that Section VI may conceivably require interior distances between buildings on one lot. That section provides in part: "Area Regulations   The following set forth minimum area and distance requirement shall apply to the altering or erecting of any building on a lot in each of the indicated classes or districts. Where the term 'average' is used, it shall mean the average of the setbacks of the buildings on the lots next thereto on either side, a vacant lot being counted as though occupied by a building set back the minimum distance required below: . . . Class G Residential District   1. Rear Yards Average or 15 feet. 2. Side Yards   6 feet. 3. Front Yards   Average or 20 feet. 4. Lot Size   5,000 square feet. 5. Projections   Same as Class B Residential District [that is, as set out in the Class B subsection: Overhead projections at the main entrance to the building may extend into the front yard not to exceed a distance of five feet]."

Side yard requirements would seem of equal general zoning significance whether two adjacent buildings are on one lot or on separate lots. A consonant construction of Section VI would require twelve feet between the two buildings into which the South Building would have to be divided to conform to Section II. Perhaps all interior spaces between buildings, even though lying between front and rear entrances of the respective buildings would also be subject to the side yard requirements since such spaces are not front or rear yards in respect of lot boundaries. We reserve these points and turn to the claim of setback violations.

2. We hold that the specification "Rear Yards   Average or 15 feet" gives the owner an option of either distance. The petitioners rely on the characterization, in the preliminary paragraph, of the fifteen foot specification as "the minimum distance required below." But this is ambigu-

ous, and if the petitioners are right a zoning minimum would be determined in many instances without reference to a reasonable distance. We construe the clause referred to as though it read: "a vacant lot being counted as though occupied by a building set back . . . [the distance in feet specified in the statement of minimum requirements] below." On this construction no part of either building raises any question except the appendages.

The rear foundation line of the South Building is, at its nearest point (a corner), about twenty-one feet from mean high water line. The petitioners contend that a violation is shown because the nearest point of the superstructure, measured from the front of a balcony, is, in vertical plane, six and one-half feet nearer the water line, that is, within fourteen and one-half feet thereof. The water line, however, is not parallel with the rear line of the building, and the alleged violation, if it exists, relates to a very short length of balcony at its corner.[1] This is too trivial to notice.

The "deck" of the South Building and an associated screen are eight feet from mean high water; the beach stairway is four feet. The setback of the beach stairway which leads from the deck at the rear of the North Building is about eleven feet. It does not appear that the "average" would help Wells in respect of all these appendages if they are a part of the respective buildings, even if we were to accept the contention that the vacant strip adjacent on the northeast (not big enough for a zoning law lot) is the lot "next" to Wells.

We hold that a deck on the water side of a harbor lot is an "accessory use" expressly permitted by Section II for Residential District, Class G, and it does not lose its character because (as is planned for these decks) one side is placed on the foundation which also serves as the foundation of the house.

Such decks are way stations between house and water.

---

[1] As we scale it, the balcony conforms at all points except within two feet of its corner, accepting as accurate the irregular water line shown on the plan.

A photograph shows a deck on the Van Arsdale lot, with pier extending below high water. The deck is about fifteen feet from the house and not attached thereto. The same photograph shows a somewhat similar structure abutting Manacher's house with no space between deck and house. It is inconsequential from a zoning point of view whether occupants sit on the grass or sand or on duck boards on a deck, except perhaps that the latter practice tends to neatness and order. The testimony shows that the decks for Wells's houses are to be removable for winter storage. We rule that they are not porches to be deemed part of the adjacent buildings. The beach stairs go with the decks. The screens are removable, rest on the decks, and are attached to the buildings. They serve suitably to screen the decks, and are appropriately classifiable therewith.

A zoning by-law could of course make it plain that setback distances are to be measured to such appendages. This too brief by-law does not do so.

3. It is not contended that mandamus is not the proper remedy. These are primarily proceedings to require enforcement of the zoning by-law; not substitutes for an appeal from an improperly granted permit. *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382, 385–386. It is not contended that the petitioners have so acted or sat by as to make enforcement inequitable.

4. The orders for judgment are vacated. An order is to be entered in each case in the Superior Court for the issuance of a writ of mandamus to require the inspector to revoke the permit issued to Wells so far as it applies to the South Building, and ordering the respondent Wells to cease construction of the South Building. The petitions are to be dismissed as to the other respondents.

*So ordered.*