NYMAN H. KOLODNY & others *vs.* BUILDING COMMISSIONER OF BROOKLINE & others.[1]

Norfolk.    May 9, 1963. — July 1, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Mandamus.    Permit.    Zoning,* "Lot."    *Words,* "Lot."

A certain petition for a writ of mandamus against the building commissioner of a town presented the question whether owners of land were entitled under the zoning by-law to build thereon pursuant to a plan on the basis of which the building commissioner had issued permits for the erection of buildings, even though the petition emphasized defects and deficiencies in the proceedings and documents underlying the issuance of the permits and its sole substantive prayer was for the revocation of the permits.    [291]

A definition of "lot" in the zoning by-law of a town as "An area of land in one ownership . . . used, or set aside and available for use, as the site of one or more buildings . . . or for any other definite purpose" did not bar owners of a parcel located partly in an apartment house district and extending more than twenty-five feet into a single residence district from dividing the parcel into lots A and B, lot A being a large lot mostly in the apartment house district and extending less than twenty-five feet into the single residence district and therefore, under the zoning by-law, governed in its entirety by the apartment house district regulations, and Lot B being a lot entirely in the single residence district and too small for the erection of any building thereon in conformity with the zoning by-law; for zoning purposes lot B was not a part of lot A and use of Lot A for an apartment house was lawful. [292–293]

PETITION for a writ of mandamus filed in the Superior Court on June 19, 1962.

Demurrers to the petition were sustained by *Tauro,* J., a motion to file a substitute petition was denied by *Fairhurst,* J., and orders dismissing the petition were entered by *Sullivan,* J.

*Jack H. Backman* for the petitioners.

*Lewis H. Weinstein* (*Lawrence A. Sullivan* with him) for Lawrence; *Phillip Cowin,* Town Counsel, for the Building Commissioner of Brookline & another, also with him.

[1] The other respondents are the former chairman of the planning board and James Lawrence, Jr.    See the *Bloom* case, *ante,* 278.

WHITTEMORE, J. This amended petition for a writ of mandamus is brought by the four persons who are plaintiffs in *Kolodny* v. *Board of Appeals of Brookline, ante,* 285. It seeks to require the building commissioner to revoke the thirteen building permits referred to in that case and in *Bloom* v. *Planning Bd. of Brookline, ante,* 278.

Interlocutory orders were entered which sustained demurrers, and, by interlocutory order, a motion to file a substitute petition was denied as was the right further to amend. Orders dismissing the petition were entered. The petitioners appealed from all these orders.

1. The demurrers were rightly sustained; no error is shown in the denial of leave to file the proposed substitute petition.

The petitioners rely on the well-established rule that a writ of mandamus may be had to enforce zoning by-laws (*Kolodny* v. *Board of Appeals of Brookline, ante,* 285, and cases cited) and cite *Bianchi* v. *Commissioner of Pub. Bldgs. of Somerville,* 279 Mass. 136, where the writ issued to enforce both the building and zoning ordinances. They stress that where the violation is under a permit which purports to authorize it, relief may include the command to revoke the permit. Thus, in the *Bianchi* case, as the original papers show, on a petition which sought an order to compel the revocation of a permit an order was sustained which commanded the revocation and the removal of the building or its remodeling to comply with the ordinances. See also *Wood* v. *Building Commr. of Boston,* 256 Mass. 238.

It is also established, as the petitioners recognize and assert, that the existence of a permit for the violation is inconsequential in proceedings to end the violation (*Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 210; *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 162–163, *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 352), and that the proceedings "are primarily . . . to require enforcement of the . . . by-law; not substitutes for an appeal from an improperly granted permit . . . ." *Van Arsdale* v. *Provincetown,* 344 Mass. 146, 151.

The petitioners are not helped by these principles for the petition and proposed substitute are, we think, primarily for revocation of the permits for alleged fatal underlying defects. The amended petition, inter alia, sets out the asserted defects in the recorded "subdivision" plan (see the *Bloom* case, *ante*, 278); the details in which the applications and plans underlying the permits are claimed to be deficient; the allegedly unlawful approval of the plans and applications by the inspector of buildings; respects in which the plans call for violation of the zoning and building by-laws, the issuance of the permits without notice to one of the petitioners notwithstanding that she had asked to be heard; and (in the concluding two paragraphs) the demand on the commissioner that the permits be revoked and his refusal to revoke with the result that the "petitioners will suffer irreparable harm and damage." The sole substantive prayer is that the writ issue to require the commissioner to revoke and annul the building permits.

The petition also set out that in January and February, 1962, Lawrence sought and was denied by the board of appeals a variance for the parcel in its form prior to being subdivided, and that the subdivision was made to circumvent the zoning by-law and the subdivision control law.

We accept the petitioners' description of the proposed substitute petition, that is, that it makes "more specific various of the allegations" of the amended petition. It also sets out that subsequent to March 29, 1962, the commissioner made void old plans and approved new plans without any public record being made, and that the new plans call for violations of both the old and new zoning by-law in specified ways. The concluding paragraphs, like those of the amended petition, recite the denial of the request to revoke, and the sole substantive prayer is again for the revocation of the permits.

Although the emphasis is thus plainly on defects and deficiencies in the proceedings and the documents underlying the permits, the petition does present the issue of the right to build on lot A after having filed the "subdivision" plan.

The petitioners' contention, duly alleged, so far as not dealt with in the *Bloom* case, *ante,* 278, is this: The structures will be "partially in a single family zone"; the lot on which the buildings will be built, although purportedly only lot A, is in law inclusive of lot B, because the zoning by-law defines "lot" as "An area of land in one ownership, with definite boundaries ascertainable or to be ascertainable of record, and used, or set aside and available for use, as the site of one or more buildings and buildings accessory thereto or for any other definite purpose"; the owners could not exclude from lot A, and continue to own, a non-zoning law "lot"; if lot B is a separate lot the building is too close to the line between lots A and B.

We rule that the quoted provision of the zoning by-law does not bar setting off a "lot" too small for "one or more buildings" even though it is for the purpose of creating another lot which will not extend so far into a more restricted district as to be affected by the provisions applicable therein. Whatever lot B is, it is not a part of lot A for zoning purposes. What was done left lot A with only the rights it would have had if the owners had never owned beyond the line between lots A and B. It is not consequential that, by setting off lot B, the owners as to lot A escaped the limitations which had applied to the larger parcel, or that a variance for the larger parcel had been denied. What they did was not illegal circumvention; rather it was acceptance of the limitations of the zoning by-law. With a variance, side yards and area requirements would have been determined with respect to a lot extending farther into the more restricted zone than the by-law permitted.

The other allegations fall short of a clear statement of impending violations of either by-law. The allegations as to setbacks do not show that the buildings will be so built as to create a violation.[2] It is alleged that the plans under-

---

[2] The record in the *Kolodny* case, *ante,* 285, shows that the board of appeals found that the "errors in set-backs have been or will be corrected."

lying the permits call for basement occupancy by tenants and inadequate parking lots, and that "contour lines and grades . . . have been artificially changed . . . to convert a normal three-story building into a two-story building with basement." The contention in respect of number of stories appears to be that basement occupancy would cause the building to be more than two and one-half stories in height. Unless there are special provisions in the Brookline by-law, our holding in *O'Connell* v. *Brockton Bd. of Appeals,* 344 Mass. 208, 212–213, shows the contention to be unfounded. There is no allegation that the buildings will be so built that there will be inadequate parking areas.[3]

The possibility of these and other violations is suggested, but neither the amended petition nor the proposed substitute petition is an appropriate vehicle to carry forward claims that such violations impend.

2. It was within the sound discretion of the judge in the Superior Court to bar further effort to require revocation of the permits because of defects in the underlying documents or proceedings. The order barring further amendment is, however, not to be construed to bar any appropriate proceedings to stop substantial violations of the by-laws in the construction of the buildings if such shall impend or occur.

*Orders affirmed.*

---

[3] The record in the *Kolodny* case, *ante,* 285, shows that the board of appeals found that there "is ample room . . . to provide off-street parking . . . and we are satisfied that the Commissioner will require compliance with the Zoning By-Law in this respect. The appellants are not yet aggrieved by any violation of Article V, and probably never will be."