WALTER A. BOWES & others *vs.* INSPECTOR OF BUILDINGS OF BROCKTON & others.

Plymouth.    February 3, 1964. — April 9, 1964.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Nonconforming use.    *Mandamus.    Evidence,* Municipal ordinance or by-law.

Mandamus to compel the building inspector of a city to enforce its zoning ordinance by abating a use of land allegedly violative of the ordinance was the proper remedy of neighboring landowners in the absence of any order or decision by the inspector as to such use affording them a remedy by appeal to the zoning board of appeals.    [296]

Under G. L. c. 233, § 75, it was proper to admit in evidence relevant ordinances and accompanying maps of a city which were identified by the city clerk as being what they purported to be and as being official records in his custody.    [296]

Although a city's zoning ordinance permitted the continuance of a preëxisting nonconforming use and certain reconstruction or structural alteration of a preëxisting building devoted thereto, there was a violation of the ordinance by the use in connection with a preëxisting nonconforming piggery of a number of large buildings erected after the adoption of the ordinance and replacing a few small "shacks" in which the piggery was conducted at the time of its adoption.    [296–298]

PETITION for a writ of mandamus filed in the Superior Court on July 31, 1962.

The case was heard by *Ford, J.*

*Robert J. Cotter* for the interveners, Joseph Nisby & others (*Floyd H. Gilbert,* City Solicitor, with him).

*Melvin S. Louison* for the petitioners.

KIRK, J.    This petition for a writ of mandamus by residents and taxpayers of Brockton seeks to compel the building inspector to enforce the zoning ordinance by abating the use as a piggery of certain land and buildings located in a residential district.    The judge ordered the writ to issue directing the respondent inspector to abate and prohibit the use of any and all buildings on the premises concerned for piggery purposes.    Only the owner of the land and the operators of the piggery, all interveners, have appealed.

We have before us a report of the evidence and the comprehensive findings of the judge.

Since the building inspector made no written order or decision from which the petitioners might have appealed to the board of appeals under the city ordinance[1] or under G. L. c. 40A, § 13, mandamus is the proper remedy. *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 190. *Hinves* v. *Commissioner of Pub. Works of Fall River,* 342 Mass. 54, 57. Under G. L. c. 213, § 1D, all questions of fact, law or discretion which were open to the judge are to the same extent open to us.

We first dispose of a question of evidence. Subject to the exception of the interveners on the ground that a proper foundation had not been laid, the judge admitted in evidence the city ordinances of 1920, 1926, and 1949, and the use districts maps which accompanied or were referred to in the ordinances of 1920 and 1926. Each of the documents mentioned was identified by the city clerk as being what it purported to be and as being part of the official records of the city in his custody. There was no error. G. L. c. 233, § 75.[2] *Newburyport* v. *Thurlow,* 324 Mass. 40.

We turn to the merits. The use of the premises as a piggery began in 1914 and has continued without interruption to the present. The first zoning ordinance for Brockton was adopted on November 29, 1920.[3] It designated a large area, in which the piggery is located, as a residence use district. The operation of a piggery was not a permitted use in that district. In consequence, the use of the premises as a piggery became a nonconforming use.[4] In

---

[1] Chapter 26, § 17 (c), of the Rev. Ord. of Brockton (1949) provides, ''The board shall hear and decide appeals from and review any order, requirement or decision made by the inspector of buildings in the enforcement of this [zoning] chapter . . ..''

[2] ''[P]rinted copies of any city ordinances . . . shall be admitted without certification or attestation, but, if their genuineness is questioned, the court may require such certification or attestation thereof as it deems necessary.''

[3] In all material respects, the current zoning ordinance, adopted March 31, 1950, and the use districts map which accompanies it, are respectively identical with the ordinance and map of 1920.

[4] Section 12 (c) of the zoning ordinance provides, ''A non-conforming building or use is one that does not conform with the regulations of a given use district.''

1920, the only structures on the land used in connection with the piggery were three or four small wooden buildings or "shacks." These have all disappeared. There are now at least eight wooden buildings (with roofs) each between seventy and one hundred feet long and thirty feet wide. In one of the buildings is a large boiler which has been used since 1950 to create steam for the cooking, in trucks, of garbage collected from nearby towns. There is, in addition, a cement structure, thirty feet square and nine feet high, covered with canvas, which is used as a storage bin for garbage to be fed to the pigs.

From the beginning, the enterprise has not been ancillary or accessory to farming, but has been a commercial piggery, where pigs are bred, kept, and sold. Between 1920 and 1940 there were approximately 200 pigs; since 1940 the number of pigs has increased to about 1,500.

The area now surrounding the piggery is largely undeveloped woodland. There are, however, several private housing developments in the general area, including the section where the petitioners live. None of these developments is visible from the piggery or located within one-half mile of it.

The judge explicitly and quite correctly predicated his order for judgment on the ground that the use for piggery purposes of all of the buildings erected after 1920 was a clear violation of the provisions of the zoning ordinance as originally adopted and as still in force. The pertinent provisions are quoted in the footnote.[5]

In *Wilbur* v. *Newton,* 302 Mass. 38, 43, Mr. Justice Qua said, "All the buildings violated the ordinance. The existence of a nonconforming use of the land when the ordi-

---

[5] Section 6 of the zoning ordinance of November 29, 1920, provides: "(a) Any non-conforming use existing at the time of the passage of this ordinance may be continued and any existing building designed, arranged, intended or devoted to a non-conforming use may be reconstructed or structurally altered, and the non-conforming use therein changed subject to the following regulations: — 1. The structural alterations made in such a building shall not during its life exceed fifty per cent of its assessed value, nor shall the building be enlarged, unless the use therein is changed to a conforming use." The same provision appears in c. 26, § 7, Rev. Ord. of Brockton (1949).

nance was enacted did not, either under its original or its amended terms, legalize new buildings in connection with that use." This principle has been consistently followed in subsequent cases. *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 208, 210. *Connors* v. *Burlington*, 325 Mass. 494, 495, 496. *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657, 660. *Simeone Stone Corp.* v. *Board of Appeals of Bourne*, 345 Mass. 188, 190, 192–193.

There was no error.

*Order affirmed.*