MARY F. BRADY *vs.* BOARD OF APPEALS OF WESTPORT
& others.

Bristol. December 9, 1964. — February 12, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Zoning,* Enforcement of zoning; Board of appeals: appeal to board; Nonconforming use or structure; Land on tidewaters. *Mandamus. Equity Jurisdiction,* Zoning enforcement. *Tidewaters.*

Discussion of remedies available to one aggrieved by nonenforcement of a town's zoning by-law. [519–521]

Even if a neighbor of a parcel of land in a town aggrieved by alleged nonenforcement of the town's zoning by-law through a determination of the building inspector that a use being made of the parcel was not in violation of the by-law had a remedy by appeal to the zoning board of appeals under G. L. c. 40A, § 13, from such determination as a "decision," he was not thereby barred from invoking the remedy of mandamus to compel enforcement of the by-law. [521–522]

In circumstances not involving an issue as to the validity of any zoning enactment, a neighbor of a parcel of land in a town, after writing to the building inspector calling attention to an alleged violation of the town's zoning by-law in the use being made of the parcel and receiving a written reply stating that "no action . . . [was] necessary because . . : [it was believed that there was] no violation," was entitled to construe the reply as a "decision" and to appeal to the zoning board of appeals under G. L. c. 40A, § 13, from such decision as one made "in violation of" the zoning by-law.   [517, 522]

In a suit in equity in the Superior Court under G. L. c. 40A, § 21, by a neighbor of a parcel of land in a town by way of appeal from a decision of the town's zoning board of appeals sustaining a decision of the building inspector to the effect that a use being made of the parcel by defendants was not in violation of the zoning by-law and that "no action . . . [by him was] necessary," the court, upon determining that the use was in violation of the zoning by-law, properly exercised its powers under §§ 21, 22, by a decree annulling the decision of the board and also enjoining the use.   [522–523]

On the facts, where, at the time of the adoption of a town's zoning by-law, there was a nonconforming use of shore premises for mooring of a few small boats to a short pier for compensation, and over a period of years after the adoption of the by-law a substantial establishment in the conduct of a marina and boatyard business was developed on the premises, the subsequent use was different in kind from the prior use and was not protected as a preëxisting nonconforming use against restrictions in the by-law.   [523]

Under a town's zoning by-law whereby the zoning of seashore premises applied "as far as private rights extend," the zoning area of such premises extended to extreme low water or one hundred rods from the ordinary high water mark, and the owner of the premises was precluded from using piers within that area in a manner prohibited by the by-law notwithstanding that he held licenses for the piers under G. L. c. 91, §§ 14, 18, and that the outer ends thereof might be outside that area.   [524]

BILL IN EQUITY filed in the Superior Court on November 13, 1961.

A final decree was entered by *Dewing, J.,* after hearing by *Hudson, J.*

The case was submitted on briefs.

*James P. McGuire & Thomas F. McGuire* for the defendants Bessette.

*James W. Killoran & Roland G. Desmarais* for the plaintiff.

WHITTEMORE, J.   This appeal in a suit under G. L. c. 40A, § 21, is from a final decree of the Superior Court that an-

nulled a decision of the Westport Zoning Board of Appeals and enjoined the appellants Godfrey and Doris G. Bessette from conducting the business of a marina or boatyard at 498 River Road in Westport. The plaintiff is the owner of adjacent premises on River Road. Only the Bessettes have appeared and answered and we refer to them as the defendants.

1. At the threshold the defendants contend that the issues were not properly before the board or before the Superior Court.

The controversy came to the board on an appeal from the written reply, in the name of the building inspector, to a notice from the plaintiff's attorney dated June 22, 1960, that the defendants were "maintaining a marina and boat yard on Westport River in the rear of said 498 River Road in violation of the Zoning By-laws." The notice asked that the inspector give the matter his immediate attention. The building inspector told the town counsel of the letter and at his request mailed it to him. The building inspector "left [it] up to the Town Counsel" and took no other action. The reply, from the town counsel in the name of the building inspector, informed the plaintiff that "upon investigation, I find that no action is necessary because I believe that there is no violation."

The board's decision of August 1, 1961, was, in effect, that the defendants' marina was a nonconforming use and that the board "at this time" had no power to allow or disallow expansion. The judge in the Superior Court ruled that the building inspector had made a decision that was subject to appeal under G. L. c. 40A, § 13, and, in effect, that the board had erroneously affirmed it. The judge also ruled that the plaintiff was an aggrieved person.

The defendants contend that the plaintiff should have proceeded by way of a petition for a writ of mandamus to enforce the zoning by-law.

That was the course the plaintiff first adopted. Upon receipt of the reply of the building inspector to her request for action, she brought a petition in the Superior Court for

a writ of mandamus. After the hearing of that action had begun, the proceeding was dismissed without prejudice, "[c]ounsel . . . [having been] persuaded to go before the board."[1]

The appeal to the board was taken on May 3, 1961. The statute as then written, G. L. c. 40A, §§ 13, 15 and 16, required only that appeals be taken within the reasonable time prescribed by ordinance or by-law or otherwise by rule of the board.[2] There was no by-law provision; no rule of the board was shown; the defendants stipulated that the appeal was taken within a reasonable time and the judge so found.

The enforcement of the zoning laws is authorized by G. L. c. 40A, § 22, the first paragraph of which provides: "The superior court shall have jurisdiction in equity to enforce the provisions of this chapter, and any ordinances or by-laws adopted thereunder, and may restrain by injunction violations thereof." This statute authorizes a municipality "to enforce the provisions of the zoning ordinances and by-laws," giving to it the power to represent the public and to act "in a governmental capacity, in the promotion of the public interest." Pitman v. Medford, 312 Mass. 618, 621. See O'Brien v. Turner, 255 Mass. 84, 86. Whether an enforcing officer is expressly designated by statute or by the ordinance or by-law, the proceeding in substance is by the municipality and, properly, is brought in its name. Building Commr. of Medford v. C. & H. Co. 319 Mass. 273, 283–284, and cases cited. Building Inspec-

---

[1] Reference to the Superior Court record informs us that the mandamus petition was by Mary F. Brady against the selectmen, the building inspector, and Godfrey and Doris G. Bessette. The dismissal, on motion of the petitioner, was assented to by all the parties. Counsel for the defendants in this suit described what happened as a "withdrawal without prejudice to follow certain administrative steps." We assume that the selectmen were joined because of the understanding of the petitioner that they were concerned with enforcement. The by-law was in evidence in the present case but has not been included in the record before us. The bill, in paragraph 5, sets out parts of the by-law including "VII–A. Enforcement. This By-law shall be enforced by the Selectmen through the Building Inspector appointed by them. . . ." The answer denied the allegations of paragraph 5 and called for proof.

[2] Compare c. 40A, § 16, as amended by St. 1963, c. 207, § 2, prescribing a period of thirty days for appeals under § 13.

*tor of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.*
344 Mass. 281, 286–287.   See *Board of Health of Woburn*
v. *Sousa,* 338 Mass. 547, 548; *Natick* v. *Massachusetts Dept.
of Pub. Welfare,* 341 Mass. 618, 619.

If the enforcing officers do not act, a citizen, having no
other remedy, may bring a mandamus petition naming the
enforcing officers as respondents.   *Atherton* v. *Selectmen
of Bourne,* 337 Mass. 250, 257, and cases cited.   *Bowes* v.
*Inspector of Bldgs. of Brockton,* 347 Mass. 295, 296.   In
these cases, although it is not necessary to name the munic-
ipality as a party,[3] the petition invokes the general right
of the citizen to have his municipality enforce the appli-
cable law.   *Sunderland* v. *Building Inspector of North An-
dover,* 328 Mass. 638, 640, and cases cited.   *Kelley* v. *Board
of Health of Peabody,* 248 Mass. 165, 169 ("In this [in-
active] attitude of the board of health and the inspector of
plumbing, any citizen may prefer a complaint to the mayor
. . . and upon the failure of such officer to act in the name
of the city, may himself proceed by petition for a writ of
mandamus").

Citizens who are in the class of aggrieved persons have
been given a statutory right in respect of action by ad-
ministrative officials.   Chapter 40A, § 13, as amended by
St. 1955, c. 325, § 1, now permits appeals by "any person
aggrieved by any order or decision of the inspector of
buildings or other administrative official in violation of
any provision of this chapter, or any ordinance or by-law
adopted thereunder."   See, for earlier provision, St. 1941,
c. 198, § 1.

Section 13 of c. 40A, as amended, does not, however,
establish a comprehensive statutory scheme for enforce-
ment which restricts to the statutory procedures action by
individual citizens seeking to invoke the enforcement proc-
ess.   Compare St. 1924, c. 488, § 20, as amended by St. 1927,
c. 220, § 6, as construed in *Godfrey* v. *Building Commr. of
Boston,* 263 Mass. 589.

---

[3] The town was named a respondent in *Van Arsdale* v. *Provincetown,* 344
Mass. 146.

The uncertain relation of § 13 to the enforcing process is apparent upon consideration of possible eventualities. Decisions granting a permit may not, within the appeal period, come to the attention of persons who will be aggrieved by a violation of the zoning law. *Atherton* case, *supra,* 337 Mass. at 259. Construction under a permit may not be begun within the appeal period. The permit, or even construction under it, may not disclose the violation. See *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382, 385. There is no requirement in the statute for notice to all persons possibly affected by an application for a permit. Aggrieved persons as to whom applicable provisions in respect of time of appeal are unreasonable may proceed by mandamus for enforcement of the law. *Gamer* v. *Zoning Bd. of Appeals of Newton,* 346 Mass. 648, 649 (five day appeal period, by ordinance). There is no provision in the statute requiring a written decision on requests for enforcement. If the decision not to comply with such a request is oral, no appeal lies. There is in such a case nothing except inaction to show what the decision is, and of course no date of decision from which to compute the time for an appeal. *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 189–190. *Hinves* v. *Commissioner of Pub. Works of Fall River,* 342 Mass. 54, 57. *Bowes* v. *Inspector of Bldgs. of Brockton,* 347 Mass. 295, 296. See *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 258–259. If, as here, the response is in writing, there is nevertheless no notice to other persons aggrieved and no basis for barring them from mandamus. There would be no occasion for notice to anyone else if the person requesting action did not appeal from the enforcing officer's decision not to act.

Failure to take an appeal within the prescribed period from the granting or denial of a permit is a bar to a direct review of the action in respect of the permit. *Church* v. *Building Inspector of Natick,* 343 Mass. 266, 268–269. *Kolodny* v. *Board of Appeals of Brookline,* 346 Mass. 285. *Kolodny* v. *Building Commr. of Brookline,* 346 Mass. 289, 290–291. *Gamer* case, *supra.* See for cases holding that a timely appeal lies in respect of a permit, *Colabufalo* v.

*Board of Appeal of Newton,* 336 Mass. 213, 216-217; *Lanner* v. *Board of Appeal of Tewksbury, ante,* 220, 221–223; *Building Inspector of Acton* v. *Board of Appeals of Acton, ante,* 453. In a proceeding for enforcement of the zoning law, however, the existence of a permit is inconsequential. *Kolodny* v. *Building Commr. of Brookline,* 346 Mass. 289, and cases cited. Hence, as this second of the *Kolodny* cases has established, the loss by an aggrieved citizen of the right of direct attack on a permit does not entail loss of the right of the same citizen to bring a mandamus petition for enforcement of the law and to stop violations in the construction going forward under the permit.[4]

Furthermore some enforcement actions raise only the issue of the validity of a new zoning enactment, or an amendment. See *Sunderland* v. *Building Inspector of North Andover,* 328 Mass. 638. It may be questioned whether the board, as the creature of the by-law under attack, is or could be concerned with that issue. See *State* v. *Gurda,* 209 Wis. 63, 67–68, and other cases cited in the *Atherton* case, *supra* (337 Mass. at 259); Annotation, 136 A. L. R. 1378, 1388–1391.

The plaintiff's rights upon receipt of the letter sent by the town counsel must be determined in the light of the foregoing principles.

The reply to the request for enforcement was, of course, in a sense a decision. But it was reasonably construable merely as courteous notice of the intent of those acting for the town not to take action. See the quotation from the *Kelley* case, *supra* (248 Mass. at 169). We hold that, in the circumstances, the aggrieved abutter, by failure to treat the notice as a decision and to appeal therefrom, did not lose the right, which until then she had had along with other citizens, and which other citizens continued to enjoy, to invoke by mandamus the public right to have the law immediately enforced. Resorting to mandamus showed an

---

[4] We need not now consider what the result would be if, in accordance with the suggestion in *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 190, the by-law contained a provision for the "filing of a request for enforcement and for formal action on the request."

intent to seek enforcement of that right rather than the reversal of a decision of the building inspector. *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382, 385–386. *Van Arsdale* v. *Provincetown,* 344 Mass. 146, 151.

We conclude that the mandamus petition brought by the plaintiff could have been maintained.

The plaintiff's right in mandamus is not, however, dependent upon the absence of any right to an appeal under c. 40A, § 13, that could have led to a determination of a violation. Section 13, as shown, establishes no sure means open to aggrieved citizens to require enforcement. It would be arbitrary and unreasonable to limit to rights under § 13 those who have asked for enforcement and received a negative reply, while all others may proceed by mandamus. Nevertheless, no consideration of justice or logic requires that we hold that an aggrieved citizen, who construes a negative reply as a decision and takes an appeal under § 13, may not have the decision reviewed. Such a holding could make decisive the choice of remedy in a marginal case where the proper course is not plain and where, as is shown below, nothing of great substance turns on the choice.

A decision of the enforcing officer that there is not a violation is, in a sense, a decision "in violation of" the zoning laws, if the establishment complained of exists in violation of law. Whatever the decision of the board, if it is not accepted, the issue will go to the Superior Court under § 21. The court has the power under § 21 to make such "decree as justice and equity may require." If the court finds a violation, justice and equity will call for the exercise of the court's enforcing power under § 22. Hence, after an appeal under § 13, just as in a mandamus proceeding, enforcement in a contested case will come only after a full hearing in the Superior Court in a proceeding in which the enforcing officer is involved.

Bringing before the board an issue of violation may do no more than postpone the decisive ruling of the Superior Court. In such a case as this, however, where the issue is

primarily one of fact, initial review by the board may be useful. We need not decide whether an appeal would lie if the only issue were the validity of a zoning enactment. See discussion above.

We hold that an aggrieved person may by appeal to the board under § 13 seek the review of a written decision that there is no violation of law in the facts complained of, but if he does not do so he does not lose his right as a citizen to invoke the public right of immediate law enforcement.

2. There was no error in the judge's conclusion that the defendants' nonconforming use had been unlawfully expanded, that is, changed "in character and area." There was evidence to support his findings as to conditions prior to and after the adoption of the zoning by-law, July 31, 1957.[5] The evidence does not persuade us that different findings were required. The by-law had no provision as to nonconforming use so that we refer only to G. L. c. 40A, § 5. The facts found show more than expansion within nonconforming premises of the nonconforming business there conducted. We agree that there was a change in quality or character as well as of the degree of use. *Marblehead v. Rosenthal,* 316 Mass. 124. *Inspector of Bldgs. of Bur-*

---

[5] The judge found that prior to that date "there were four or five boats associated with the premises . . . moored . . . or tied to a 12 foot pier. There was also a catwalk extending from the shore. Three of these boats were skiffs, and one or two were cabin cruisers, the owners of which were charged a fee for the use of the premises. . . . If any boat repair work was . . . [done], it was of a very inconsequential nature . . . . Thereafter the premises underwent a substantial change. What was residential use in appearance became a boat yard with the changes taking place gradually in the Fall of 1957 and increasing in 1958 and subsequent years. A large lighter towed by a tow boat was brought to the shore. A barge measuring 28 x 90 feet used as a docking facility was permanently affixed to the shore. A large wooden structure or cradle was built on the land. Two piers, one 90 feet long, and 10 feet wide, and the other 80 feet long were erected. A house was provided for business invitees to enjoy refreshments and cooked meals. Repair service, painting and drydocking was performed. A gasoline pump was installed on the pier for servicing boats. A marine crane owned by Bessette is kept alongside the shore. A marine railway was built to pull boats out of the water. A fee was charged for docking and mooring. Boats including cabin boats, are dry docked during the winter. A boat repair yard has been established since 1957. In 1961, Bessette filed an application with the Department of Public Works [Water Division] for approval to build timber piers, stone dyke, to do dredging, and dump some fill [Exhibit 17.] Auto traffic moves in and out of the premises from 5: 00 a.m. until about 11: 00 p.m."

*lington* v. *Murphy*, 320 Mass. 207. *Lynn* v. *Deam*, 324 Mass. 607. *Adamsky* v. *Mendes*, 326 Mass. 603. *Planning Bd. of Reading* v. *Board of Appeals of Reading*, 333 Mass. 657. *Seekonk* v. *Anthony*, 339 Mass. 49, 54. *Hinves* v. *Commissioner of Pub. Works of Fall River*, 342 Mass. 54, 57. See also *Bowes* v. *Inspector of Bldgs. of Brockton*, 347 Mass. 295.

3. There is nothing in the suggestion that the provisions of G. L. c. 91, §§ 14 and 18, override the local zoning by-law so that, having the permission of the Commonwealth to lay out piers and wharves, the defendants may use them contrary to the terms of the zoning by-law. The residence district is zoned along the Westport River "as far as private rights extend." Those rights extend to extreme low water or one hundred rods from the ordinary high water mark. *Iris* v. *Hingham*, 303 Mass. 401, 403. That the outer extremities of the piers may be outside the area subject to zoning regulation in no way enlarges the use which may be made of the private property within the regulated area.

*Decree affirmed.*