ALLAN F. CRAWFORD & others[1] vs. BUILDING INSPECTOR
OF BARNSTABLE & another.[2]

Barnstable.   February 9, 1967. — May 2, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning*, Lodgers, Nonconforming use.

Under a zoning by-law providing that in a certain residence district "no
building or premises shall be used for any purpose except: (a) De-
tached one-family dwelling.   (b) No building shall be used for the pur-
pose of taking lodgers except where such use of a building lawfully
exists at the time this by-law is adopted," use for the purpose of taking
lodgers of a building which lawfully had been so used at such time was
a nonconforming use.

PETITION for a writ of mandamus filed in the Superior
Court on June 25, 1965.

The case was heard by *Collins*, J., on demurrer.

The case was submitted on briefs.

*Daniel J. Fern* for the petitioners.

*Bernard A. Dwork* for the intervener, Harbor View
Realty, Inc.

KIRK, J.   The judge in the Superior Court sustained the
demurrer of the intervener, Harbor View Realty Inc. (Har-
bor View), and dismissed the petition for a writ of man-
damus which sought to compel the building inspector of
Barnstable to revoke a building permit granted to Harbor
View and to enforce the zoning by-law of the town.   The
petitioners, who are taxpayers and residents of the village
of Cotuit in the town of Barnstable, have appealed.

We summarize the allegations of the petition.   The zon-
ing by-law of Barnstable, which is incorporated in the peti-
tion, divides the residential property of the town into
several lettered districts, each district having its own re-
strictions.   The petitioners are owners of premises within a

[1] Edith S. Crawford, Donald E. Higgins and Mary Higgins.

[2] Harbor View Realty Inc., intervener.

residence D district. Paragraph N of the by-law, so far as applicable, provides: "N. Residence D Districts 1. Use — No building shall be erected or altered and no building or premises shall be used for any purpose except: (a) Detached one-family dwelling. (b) No building shall be used for the purpose of taking lodgers except where such use of a building lawfully exists at the time this by-law is adopted." At the time of the adoption of the zoning by-law the premises owned by Harbor View were operated as a small summer hotel with limited facilities for lodging, food and other services. Under G. L. c. 40A, § 5, the premises constitute a nonconforming use.

It is further alleged that in December, 1964, Harbor View Manor Club, Inc., as occupant of the premises, sought from the board of appeals a special permit which would authorize certain alterations. Among these were the construction of a pier from the premises into Cotuit Harbor, the enclosing of an open porch on the premises, the installation of showers and lockers in the basement of the building, and the addition of 900 square feet onto the building. In January, 1965, the petition for the special permit was denied by a unanimous vote. In May, 1965, the building inspector issued a building permit to Harbor View authorizing the enclosure of an open porch with a floor area of about 1,600 square feet, the raising of the porch floor level by seven inches, the extension of an existing enclosed porch and the installation of a laundry, showers, and employees' living quarters in the basement of the building. Many of these changes and alterations have been accomplished or are in progress. In addition, a lawn of 9,000 square feet has been stripped purportedly for use as a parking facility, and a large timber pier extending into Cotuit Harbor is under construction.

In sustaining the demurrer and in denying leave to amend, the judge expressly ruled that Harbor View's use of the premises was "a permitted use"[3] under paragraph

---

[3] The use in the order of the term "permitted use" was, in light of the by-law, inaccurate. Permitted uses, as defined in paragraph C of the by-law, are uses which are permitted in all districts and include: agriculture, churches, education, municipal recreation, water supply, hospitals and medical clinics.

N 1 (b) of the by-law. The questions presented by this appeal are (1) whether a "building . . . for the purpose of taking lodgers" is a conforming use under paragraph N 1 (b) of the by-law, and (2) whether a small hotel qualifies as such a building. On the view we take of this case, the answer to the first question is dispositive of the appeal and we need not discuss the similarity or difference in meaning between the terms "hotel" and "lodging place." Cf. Gallagher v. Board of Appeals of Falmouth, 351 Mass. 410.

In some residence districts, the by-law (a) forbids the erection or alteration of any building and the use of any building or premises except for family dwelling, and (b) authorizes the taking of a limited number of lodgers in the dwelling, the number being contingent upon the kind of dwelling (one or two family) and upon the classification of the district in the by-law. Specifically, in districts classified as residence A, A1, B, and B1, the taking of a limited number of lodgers "by a family resident in the dwelling" is authorized. In districts classified as residence C1, the "taking of not more than six (6) lodgers in any dwelling" is authorized (emphasis supplied). Thus in all residence districts where the taking of lodgers is authorized under the by-law a dwelling is a requisite,[4] and in all but one of these (C1) family residence in the dwelling is required.

In contrast to the foregoing provisions there are more restrictive provisions which apply to residence districts C and D. In the latter districts the erection of buildings other than detached one family dwellings and the taking of any lodgers in any building, dwelling or otherwise, is forbidden "except where such use of the building lawfully exists at the time this by-law is adopted." Harbor View contends that the quoted language makes the summer hotel, which was lawfully being operated when the by-law was adopted, a conforming use and that, as a consequence, it is

---

[4] In a residence A district, in addition to the taking of lodgers in a one or two family dwelling by a resident family, the board of appeals may authorize, by special permit, a "[h]otel, specifically excluding motel, boarding house, lodging house, apartment house . . . ."

not required under paragraph D 3 (a) of the by-law to obtain a special permit from the board of appeals before undertaking substantial alterations to the premises.[5]  We think the argument is untenable.

The quoted language is that which is customarily and conventionally used in a zoning ordinance or by-law to indicate that the particular restrictive provision is not applicable to a lawful use existing at the time of its adoption.  See *Colabufalo* v. *Public Bldgs. Commr. of Newton,* 332 Mass. 748, 751 (fn. 1).  We think it has no other purpose.  The quoted language is consistent with the general provision of the by-law which reads, "Any . . . lawful use of a building or premises . . . existing at the time this by-law is adopted may be continued, although such . . . use does not conform to the provisions hereof."  Apart from the plain words of paragraph N of the by-law, we think that the by-law as a whole discloses a pattern evincing a purpose on the part of the inhabitants to control, curtail and eliminate the taking of lodgers in some residential parts of the town.  In districts where hotels, motels, lodging houses or boarding houses are authorized, the conditions are prescribed. Adoption of the interpretation of paragraph N which Harbor View advocates would thwart the purpose of the by-law. We hold that Harbor View's use of its premises as a hotel, although lawful, is a nonconforming use.

It cannot be said on demurrer that the changes allegedly made and intended to be made by Harbor View are so minor as not to require a special permit under paragraph D 3 (a) (see footnote 5).  The order sustaining the demurrer and dismissing the petition must be reversed.  An order is to be entered overruling the demurrer.  The case is to stand for hearing on the merits.

*So ordered.*

---

[5] "D . . . 3.  In all Districts:  (a) Provided the Board of Appeals first grants a special permit therefore [*sic*], any such non-conforming building or structure may be altered or increased in size or any such non-conforming use may be extended over all or any part of the premises upon which the same is located at the time this by-law is adopted.  It is the intent of this paragraph that only substantial alterations require a special permit; minor alterations may be permitted at the discretion of the Building Inspector."