ALLAN F. CRAWFORD & others[1] vs. BUILDING INSPECTOR OF BARNSTABLE & another.[2]

Barnstable.   March 7, 1969. — June 6, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Zoning,* Nonconforming use or structure, Parking area, Blacktopping, Pier, Structure, Seashore property, Accessory use.  *Structure.  Pier.*

On the facts respecting a small commercial hotel or club at the seashore having the zoning status of a preëxisting nonconforming use, a change in the building consisting of removing outside steps leading to a narrow open porch supported by the foundation of the building and enclosing the porch so that it became part of an adjacent room was not, within G. L. c. 40A, § 5, a "reconstruction, extension or structural change" or an alteration of the building "to provide . . . for its use for the same purpose to a substantially greater extent"; and, within the town's zoning by-law, the change was not a "substantial" alteration requiring a special permit from the board of appeals but was a "minor" alteration permitted at the discretion of the building inspector.  [177–178]

Blacktopping of a parking area on the premises of a small commercial hotel or club at the seashore having the zoning status of a preëxisting nonconforming use was not in violation of the town's zoning by-law and did not require a permit from the building inspector.  [178–179]

A new, substantial timber seashore pier, not a replacement of any previous pier, which extended nearly three hundred feet into the water and had an attached float and on both sides a number of mooring or berthing bays defined by driven piles and which was constructed in connection with a small commercial hotel or club having the zoning status of a preëxisting nonconforming use, did not acquire the protection of that status [179–180]; nor was the pier, within the town's zoning by-law, a permissible accessory use as "customarily incident" to the hotel or club [180].

A seashore pier, constructed in violation of the town's zoning by-law, was not validated by the fact that it was constructed under a license granted

[1] Edith S. Crawford, Donald E. Higgins and Mary Higgins, all taxpayers of Barnstable and residents of the village of Cotuit in the vicinity of the locus.

[2] Harbor View Realty Inc., intervener.

by the Department of Public Works of the Commonwealth "subject to all applicable . . . Municipal laws . . . and regulations." [180] Zoning covering the entire area of a seashore town was applicable to a pier constructed within that area. [180–181]

PETITION for a writ of mandamus filed in the Superior Court on June 25, 1965.

Following the decision reported in 352 Mass. 504 the case was heard by *Hennessey, J.*

*Daniel J. Fern* for the petitioners.

*Bernard A. Dwork* (*Enid M. Starr* with him) for the intervener, Harbor View Realty, Inc.

KIRK, J.   The petitioners for a writ of mandamus seek to compel the building inspector of Barnstable to revoke a building permit granted to the intervener Harbor View Realty Inc. (Harbor View), and to enforce the zoning by-law of the town.   After our earlier decision overruling a demurrer of Harbor View and ordering the petition to stand for hearing on the merits (*Crawford* v. *Building Inspector of Barnstable,* 352 Mass. 504) there has been a hearing, and an order for judgment dismissing the petition.   The petitioners appeal.   We have a report of material facts, a narrative condensation of testimony and the exhibits.   The judge took a view.   Since the applicable principles of review for mandamus are the same as in equity we accept as final the findings of the judge unless plainly wrong, make such other findings as are necessary and justified by the evidence and decide the case on our own judgment.   *Hanrihan* v. *Hanrihan,* 342 Mass. 559, 564.   *Chartrand* v. *Registrar of Motor Vehicles,* 347 Mass. 470, 473.   *Iverson* v. *Building Inspector of Dedham,* 354 Mass. 688.

Harbor View is the owner of premises in the village of Cotuit in the town of Barnstable.   The premises are within a "Residence D" district under the zoning by-law.   All of Cotuit is zoned for residence purposes.   Harbor View conducts on the premises for commercial purposes a small hotel or "club," as a lawful, nonconforming use under the by-law, 352 Mass. 504, 507.   Since May, 1965, pursuant to a permit "to repair and remodel . . . no area change" issued by the

building inspector, certain changes later to be described in the Harbor View building have been accomplished.

During the same period, and without any permit from the building inspector, other changes were made on the premises. One of these was the leveling and blacktopping of an area in front of the building for use as a parking lot.[3] The other was the construction of a timber pier and float which "extends into the bay some 280 feet" from the beach or water side of the premises.

We consider the challenges of the petitioners to the judge's decision on (1) the building changes, (2) the parking lot and (3) the pier.

1. The building changes at issue concern a porch and stair landing at the rear or water side of the building. An outside stairway, consisting of five or six steps, supported by the fieldstone foundation of the building, led up to an outdoor porch or landing, eight or ten feet long by two feet wide, also supported by the foundation of the building. Part of the porch had a roof over it. By the change, the steps were eliminated. The landing-porch area above the foundation was so enclosed that it became part of the room to which it always had been contiguous on the ground floor of the building. The judge found "(a) that the cubic area of enclosed space on the first, or 'ground,' floor of the building has been increased by the recent enclosures by no more than three to four per cent, (b) that the cubic area of enclosed space in the entire building, above ground, has been increased by said enclosures by no more than one to two per cent, (c) that the enclosure of these areas followed, and resulted from, the advice of an expert construction engineer that persisting and increasing dry-rot which was occurring in the wood of the formerly open porch and stair-landing could be prevented only by enclosing these areas, (d) that the said new enclosures have enhanced the internal

[3] The judge's findings of fact imply that the blacktopping and the building of the pier were done under permit from the building inspector. The inspector testified that he did not issue a permit for these purposes, and the permit does not refer to them.

and external appearance of the building and rendered it more attractive to the eye than it was previously, (e) that the square footage of area and foundation covered by the entire building including porches is precisely the same as it was prior to the aforesaid enclosure work."

The petitioners argue that these changes (the enclosure of the porch stair-landing and the elimination of the steps) are, on the one hand, "reconstruction, extension or structural change" not exempt under G. L. c. 40A, § 5, and in violation of the zoning by-law in the absence of a special permit; or, on the other hand, that they are "substantial alterations" under part D, 3 of the zoning by-law and beyond the "minor alterations" permissible in the discretion of the building inspector.[4]

It is our view that the facts found by the judge and supported by the evidence bring the building changes within "the minimum of tolerance that must be accorded to nonconforming uses" under G. L. c. 40A, § 5. *Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 209. This is not the case of an "alteration of an existing building for substantially greater use [which] is expressly put outside the exemption by the statutory words: 'but it shall apply . . . to any alteration . . . when the same would amount to reconstruction, extension or structural change, and to any alteration . . . to provide . . . for its use for the same purpose to a substantially greater extent' . . . [cases

---

[4] "N. Residence D Districts  1. Use-No building shall be erected or altered and no building . . . shall be used for any purpose except: (a) Detached one-family dwelling." Part D of the by-law regulates nonconforming uses. It provides: "1. Any lawful building or lawful use of a building or premises or part thereof in the Town of Barnstable existing at the time this by-law is adopted may be continued, although such building or use does not conform to the provisions hereof.  2. Any such non-conforming building which has been damaged by fire or other cause to any extent may be repaired or rebuilt, *but the total floor area shall not be increased,* unless first authorized by a special permit from the Board of Appeals, and providing said owner shall apply for a building permit . . . .  3. In all Districts: (a) Provided the Board of Appeals first grants a special permit therefor, any such non-conforming building or structure may be altered or increased in size or any such non-conforming use may be extended over all or any part of the premises upon which the same is located at the time this by-law is adopted. It is the intent of this paragraph that only substantial alterations require a special permit; minor alterations may be permitted at the discretion of the Building Inspector" (emphasis supplied).

cited]." *Chilson* v. *Zoning Bd. of Appeal of Attleboro*, 344 Mass. 406, 411–412. It is the case of repairs replacing rotted exposed parts of a building, and alterations to preserve the replaced parts from deterioration by weather and to improve the appearance of the building rather than to enlarge the use of the building. Whatever enlargement followed the alteration (and there was none whatever so far as overall floor space was concerned) was negligible rather than substantial and was incidental rather than purposeful. *Parrish* v. *Board of Appeal of Sharon*, 351 Mass. 561, 567, relied upon by the petitioners, has no application to the case at bar. There was no violation of zoning provisions in the building changes attacked by the petitioners. The order to dismiss the petition in so far as it sought to undo acts done under the building permit was right.

2. The parking area is located between the building and public road side of the premises. The physical facts are best described by the findings of the judge that "(a) the surface of the area . . . was formerly dirt, grass, shrubbery and trees, (b) the majority of this area has now been blacktopped, although some grass and shrubs remain, (c) the new surface was applied in professional fashion and is attractive in appearance, (d) motor vehicles of patrons formerly parked upon a dirt path and indiscriminately upon all parts of the grass surface, (e) there is no credible evidence that any larger number of vehicles is presently accommodated upon the new blacktop surface during the busy summer season than were formerly parked upon the dirt and grass, and (f) there has been a substantial decrease in dust caused by motor vehicles since the blacktop was installed."

The building inspector did not issue a permit to level and blacktop the surface in front of the building. He testified that as inspector he had never issued a permit for the blacktopping of any area and knew of no authority empowering him to prohibit or permit it. The petitioners cite no authority to that effect and we are aware of none. The situation is comparable to that dealt with in *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188 (tennis court),

and is controlled by the discussion and conclusion of that opinion. There was no error in ordering the dismissal of the petition as it related to the parking area.

3. The pier, on the beach or water side of the premises, presents a different situation. On the law and the evidence we reach a different conclusion from the judge. Unlike the blacktopped parking area, the pier is unquestionably a structure. The pier is 285 feet long and eight feet wide. The deck forming the "T" at the end of the pier is forty-eight feet by fifteen feet. On one side of the pier there are seven bays, each about ten feet wide and defined by piles driven twenty feet from the pier, for the mooring or berthing of boats. On the same side of the pier there is a float, sixteen by twenty feet, which is reached from the pier by a ramp ten feet long. On the other side of the pier there are thirteen bays or berths each about twelve feet wide and defined by mooring piles driven twenty feet from the side of the pier. The pier does not stop or end at the beach. It continues over the beach and bulkhead to the graded premises of Harbor View. The pier is the dominant structure in Cotuit Bay. Piers which are accessory to residences in the bay are much smaller. The town pier, about 600 feet away, extends 100 feet into the bay. The photographs show the Harbor View pier to be for commercial, not residential purposes.

Before the pier was built people moored their boats in the bay and came to the beach by dinghy; others would beach directly in front of the inn.[5]

The facts show much more than expansion within nonconforming premises of the nonconforming business of a small hotel or club. See *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 523. The pier is a wholly new and permanent structure where none had existed before. It makes a use of the water side of the premises which is different in quality, character and kind as well as degree from that which

---

[5] There was testimony that there were in years past moorings near the edge of the beach and in the Harbor View area of the harbor for the use of guests of the hotel.

was made of it before.  See *Bridgewater* v. *Chuckran,* 351 Mass. 20, 23, and cases cited.  Indeed, to quote the judge, "the efficiency and utility of that portion of the harbor has been enhanced, *as a site for sport boating,* by the installation of the pier" (emphasis supplied).  The effect on the neighborhood which the new use will produce consequent upon the inevitable advertising needs no elaboration.  In our judgment the pier is not, as Harbor View contends, a "reasonable substitution of facilities" for reaching the hotel from the bay, but is the creation of a wholly new facility designed especially to attract and accommodate the boating public on a large scale.  It is a new enterprise on the beach side of a residence D area.  In bold contravention of the provisions of G. L. c. 40A, § 5, and the zoning by-law, Harbor View has literally staked out an area in excess of 14,000 square feet on the water side of the premises for an impermissible use.  It is a use which may be prevented on a petition for a writ of mandamus.  *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 517–522.

The pier is not, as argued, a permissible accessory use under part E of the zoning by-law.[6]  A pier for the use of residents may well be "customarily incident" to a waterfront residence, but we reject Harbor View's contention that a pier constructed for commercial purposes in a single residence district is "customarily incident" to a nonconforming commercial hotel in that district.

No special rights accrue to Harbor View because the pier was constructed under a license granted by the Commonwealth's Department of Public Works.  The license was "subject to all applicable Federal, State, County, and Municipal laws, ordinances and regulations."  Such licenses may not be used contrary to the terms of zoning by-laws.  *Rose* v. *Board of Appeals of Wrentham,* 352 Mass. 301, 303.

The entire area of the town of Barnstable has been zoned.

---

[6] Part E of the by-law which governs accessory uses provides that "[a]ccessory uses customarily incident to any of the uses permitted in a particular residence district and not detrimental to a residential neighborhood shall be permitted in that particular residence district."

The seaward boundary of the town coincides with the marine boundary of the Commonwealth. G. L. c. 42, § 1. Cf. *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 524. The whole pier is within the area subject to the zoning regulation.

The record does not support any suggestion that the pier was erected with the acquiescence of the building inspector or board of appeal or counsel for the town or the board of appeal. The license from the Commonwealth was filed and recorded January 7, 1965. This petition for a writ of mandamus was filed June 25, 1965. Harbor View has proceeded at its risk.

The order for judgment dismissing the petition is reversed. An order is to be entered for issuance of the writ forbidding forthwith the use of the pier for the mooring of boats or as a means of access to or egress from the intervener's premises, and directing the building inspector to have the pier dismantled by the intervener. The case is to be retained by the Superior Court with power to enter such additional orders, consistent with this opinion, as may be necessary to insure the enforcement of the zoning by-law by the building inspector.

*So ordered.*