DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the City of Newport (Board). Alliance for Art Architecture, Inc. and The Woodbridge Foundation f/k/a The Cutler Foundation (appellants) seek reversal of the Board's decision of June 29, 1999 (Decision), denying their application for a special use permit[1] Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.[2]
 Facts and Travel
On October 30, 1998, the appellants filed an application for a special use permit. The property in question is located on Bellevue Avenue, between Victoria Avenue and Shepard Avenue, in the City of Newport, and is designated as Assessor's Plat 36, Lot 38.[3] The property, which contains 125,906 square feet, is situated in the city's "R-60" zoning district. The appellants proposed to convert a principal portion of the first floor of an existing single family dwelling on the premises into a museum displaying "various works of art and to maintain a private residence on the second floor of the premises. The proposal called for The Woodbridge Foundation, which would operate the museum, to pay rent to Alliance for Art Architecture, Inc., the owner of the property in question. In the R-60 zoning district, museums are permitted subject to the granting of a special use permit from the Board. See Newport Zoning Ordinance (Ordinance) 17.40.020 (B)(4).
A total of four hearings on the application were held before the Board.[4] During the hearings, the Board heard sworn testimony from several witnesses. Among them was Laurence S. Cutler, who testified, inter alia, that he believed the proposed museum would have an annual attendance of approximately 12,000 visitors. The Board also heard the testimony of John Grosvenor, an architect with a firm in Newport. Mr. Grosvenor testified that the plans for the museum were reviewed by Newport's Fire Marshal, and that the Marshal did not object to the proposed access for emergency vehicles. The Board also heard testimony from James Cronan, a civil engineering and traffic expert, who testified that the proposed museum would have a minimal effect on traffic in the surrounding area of the property.
The Board also heard the testimony of Blake Henderson, a civil engineer, who testified as to the inadequacy of the width of the entrances to the property for emergency vehicles. Mr. Henderson also testified that some of the parking spaces did not meet the width or length requirements set out in the Ordinance, and that the internal traffic flow on the property of the proposed museum would be problematic.
At the June 28, 1999 hearing, the Board, with three members voting to approve and two members voting to deny, denied the appellants' application for a special use permit.[5] In denying the application, the Board found that the appellants did not demonstrate that the museum would be owned or maintained by an entity exempt from income taxation, as required by the Ordinance, and the proposed museum is not in "accord with the spirit or the intent of the drafters of the Zoning Ordinance with respect to museums or museum use." Decision at page 6. The Board also determined that the application must be denied bccause the Ordinance does not allow for a private residence and a museum to be housed in the same building. Decision at 6 and 7. The Board further determined that the appellants' proposal would, in contradiction to the policy of Newport's Comprehensive Plan, increase commercialization in the R-60 district. Decision at 7.
Furthermore, the Board determined that the appellant's application was defective on its face, because the actual owner of the property in question was not the applicant on the petition and no lessee was listed on the petition. Decision at 7. Finally, the Board found that the proposed access entrance to the driveway of the property was 11' 6" wide, which is less than the minimum width required by the Ordinance; that the appellants failed to demonstrate that the proposed parking would not destroy any old trees; and that the appellant failed to present credible evidence concerning anticipated attendance levels at the museum. Decision at 7.
On July 16, 1999, the appellants timely filed this appeal. On appeal, the appellants argue that the Decision was arbitrary and capricious. Specifically, the appellants argue that in the Decision, the Board ignored the tax-exempt status of The Woodbridge Foundation; that they misconstrued the definition of museum to exclude buildings that also house residential units; and that the parking plan submitted by the appellants did in fact conform to the standards set forth in the Ordinance
 Standard of Review
This Court's appellate jurisdiction of Zoning Board of Review decisions is pursuant to G.L. 1956 § 45-24-69 (D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly enoneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing the decision of a Zoning Board of Review, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the Zoning Board of Review.[6] Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v.Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." (Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. BellevueShopping Center Associates v. Chase, 574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey,495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 Special Use Permits
Section 17.108.020 of the Ordinance permits the Board to grant special use permits. Such permits may be granted only "where the [Board] finds that the proposed use or the proposed extension or alteration of an existing use is in accord with the public convenience and welfare[.]" Ordinance § 17.108.020 (C). InSalve Regina College v. Newport Board of Review, 594 A.2d 878
(R.I. 1991), our Supreme Court held that a zoning board may not deny an application for a special use permit when such application meets the requirements of the community's zoning ordinance, unless the granting of the permit would be inimical to the public health, safety, morals, and welfare of the community.
 Definition of "Museum"
Finding of fact #16 of the Decision states: "When reading both controlling sections of the Zoning Ordinance together (Newport Zoning Sections 17.08.010 and 17.100.230), it is clear that a museum must be an entire building, not a portion of a building. . . . The Newport Zoning [O]rdinance is replete with instances where the drafters have indicated their intent that `a portion' of something is appropriate but did not do so with respect to museums." Decision at pages 4 and 5.
 Section 17.08.010 of the Ordinance defines museum as:
 "a building having public significance by reason of its architecture or former use or occupancy or a building serving as a repository for a collection of natural, scientific or literary curiosities or objects of interest, or works of art, and arranged, intended and designed to be used by members of the public for viewing, with or without an admission charge, and which may include as an accessory use the sale of goods to the public as gifts or for their own use."
A zoning board is presumed to have knowledge concerning matters relating to the effective administration of its community's zoning ordinance. See Smith v. Zoning board of reviewof City of Warwick, 103 R.I. 328, 237 A.2d 551 (1968). However, a zoning ordinance should be "strictly construed and not applied to interfere with the beneficial use of property unless the restriction appears on the face of the ordinance or by clear implication therefrom." City of Providence v. First NationalStores Inc., 100 R.I. 14, 19, 210 A.2d 656, 659-60 (1965). Moreover, this Court is required to resolve all doubts and ambiguities contained in the Ordinance in favor of the appellants. See Denomme v. Mowry 557 A.2d 1229, 1231 (R.I. 1989) (citing City of Providence v. O'Neill, 445 A.2d 290, 293 (R.I. 1982).
Here, the Ordinance does not state that a museum must be an entire building, or that it cannot share a building with a private residence. Furthermore, there is no clear implication that such a result was intended to be derived from the definition in the Ordinance. Our Supreme Court has held that the rules of statutory construction apply equally to the construction of an ordinance. Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citing Town of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573 (1973); Nunes v. Town of Bristol, 102 R.I. 729, 737,232 A.2d 775, 780 (1967)). To interpret the Ordinance as preventing both a residence and a museum to exist in the same building interferes with the beneficial use of such a building without the clear mandate of the Ordinance.
 Tax Exempt Status Section 17.100.230 of the Ordinance states in pertinent part:
 "Museums are allowed, subject to the following conditions: A. It must maintain its status as a museum exempt from income taxation under the internal Revenue Code[.]"
At the April 12, 1999 hearing, Laurence Cutler testified that in 1994 the Woodbridge Foundation, then known as the Cutler Foundation, received tax exempt status from the internal Revenue Service. Evidence of this status was presented at the hearing. No evidence was presented to show that The Woodbridge Foundation was not a tax-exempt entity. A review of the entire record by this Court clearly demonstrates that the Woodbridge Foundation did enjoy tax-exempt status.
The Board found, however, that the applicants "failed to demonstrate that they have (tax-exempt status]." Decision at 5. This finding appears to be based on testimony concerning the tax-exempt status of a separate entity, the American Civilization Foundation, formed by the Cutlers. However, the only entity the tax-exempt status which was relevant to this application was the Woodbridge Foundation, as it was the applicant before the Board.
It is the obligation of a Zoning Board of Review to decide cases before it so that the content of the decision meets minimal requirements. The Zoning Board's findings must be factual rather than conclusory, and the application of the legal principles must be something more than the recital of a litany. See Hopf v. Boardof Review of Newport, 102 R.I. 275, 230 A.2d 420 (1967). Here, the Board's finding concerning tax-exempt status was not factually based, and was clearly erroneous in view of the substantial evidence on record.
 Parking and Other Considerations
A further reason cited in the Decision for denying the appellants' application was the applicant's alleged noncompliance with the Ordinance's regulations concerning the parking plan. According to the Decision: "There is an access entrance to the driveway for the property which is 11-1/2 feet wide and does not meet the minimum regulatory requirements of the zoning ordinance" and "the petitioner has failed to demonstrate than any of the proposed parking plans conform to the requirements of the zoning ordinance with respect to size, drive aisle width and parking angle or that the proposed parking plans would not destroy the existing, large old trees on the site." Decision at 7.
 Section 17.104.040 (D) of the Ordinance reads, in pertinent part:
 "Access driveways from a street . . . shall be not less than twelve (12) feet in width for one-way traffic . . . Points of entrance and exit for driveways onto the street shall be located so as to minimize hazards to pedestrians and vehicular traffic."
Section 17.104.020 (4) sets out the amount of parking spaces required for a museum. Not fewer than 10 spaces and one additional space for each 300 square feet of gross square footage in excess of 2,000 gross square feet are required. Furthermore, 17.104.040 (A) provides that each off street parking space shall be a minimum of 20 feet long and a minimum of 9 feet wide.
Here, according to the undisputed evidence presented to the Board, a 12 foot entrance to the museum's driveway was provided for in the appellants' plans.[7] Likewise, the testimony in the record reveals that 32 parking spaces, which conform, to the minimal size requirements have not only been provided, but constitute eight more than the 24 spaces required by the formula provided in Section 17.104.020(4).[8]
The finding of the Board concerning the parking plan was not based on the factual evidence in front of it, and the Ordinance section which applies to parking was not strictly construed by the Board; but rather, was applied to interfere with the beneficial use of the property at issue. See e.g. First NationalStores, 100 R.I. at 19, 210 A.2d at 659-60. Therefore, the Board's finding as to the parking plan was clearly erroneous in view of the reliable, probative, and substantial evidence of record.
Furthermore, the Board, as an additional basis for denying the application, found that the museum also would allow for an encroachment of commercialism into the R-60 district; and Mr. Cutler, could not accurately forecast the number of visitors to the proposed museum.
As stated earlier, a Zoning Board may not deny an application for a special use permit when such application meets the requirements of the community's zoning ordinance, unless the granting of the permit would be inimical to the public health, safety, morals, and welfare of the community. Salve ReginaCollege, 594 A.2d 878. it is apparent to this Court that the Board has provided no evidence on which to base its conclusion that the proposed museum will provide for undue "commercialism" in the zoning district. The Ordinance does not prohibit a museum from leasing, rather than owning, the premise it occupies. Likewise, museums are allowed by the Ordinance to contain gift shops. Ordinance § 17.100.230 (B)(4). As such, the proposal meets the requirements of the Ordinance, as it applies to museums.
This Court further finds that concerns about Mr. Cutler's attendance forecasting are irrelevant. The expert testimony that the Board heard concerning traffic flow pointed to the conclusion that traffic would not be a problem. No substantial evidence of traffic problems was presented to the Board which could rationally lead the Board to conclude that such problems would occur. Mr. Culter's ability to accurately predict the actual number of visitors to the proposed museum does not constitute evidence of potential traffic problems in the neighborhood of the property in question.
 Conclusion
After a review of the entire record, the Court finds that the decision of the Board constituted an error of law and was not supported by the reliable, probative, and substantial evidence of record. Substantial rights of the appellants have been prejudiced. Accordingly, the decision of the Board is reversed.
Counsel shall prepare the appropriate order.
[1] Laurence and Judy Cutler are the sole shareholders of Alliance for Art Architecture, Inc. On December 16, 1998, the property in question was transferred to Alliance for Art 
architecture, LLC, also solely controlled by the Cutlers.
[2] The appeal is compliant with the stature and will neither be dismissed nor stayed as urged by "intervenors" Noreen Drexel and Jonathan Pardee.
[3] The property is known as "Vernon Court".
[4] The hearings were held on April 12, 1999; May 10, 1999; May 24, 1999; and June 28, 1999.
[5] A vote of at least 4-1 in favor of the application was required for the approval of the special use permit.
[6] The court also received a letter and assorted materials from Citizen Lynne K. Bryer. The court initially declined to read them as there was no indication that they had been transmitted to the parties in the matter. When Ms. Bryer was informed that the court was ethically precluded from reviewing anything not furnished to all parties, she dispersed the material to counsel. Legally, the court cannot consider Citizen Bryer's remarks in any way in shaping its decision. Ms. Bryer is not a party to the controversy and her statements cannot be admitted into the record to which this court is confined. However, I feel compelled to remove my robe for a moment and comment that Citizen Bryor's twelve page letter exudes sincerity, grace and intelligence. As the holder of a bachelor's degree in art history, I found the letter totally fascinating. Her substantive knowledge of art and enthusiastic commitment to the cultural development of her community are most impressive.
[7] Furthermore, John Grosvenor testified that upon an informal review of the parking plan, Newport's Fire Marshal did not express concern with access for emergency vehicles.
[8] Although Blake Henderson testified that some of the parking spaces provided for in a parking plan submitted by the appellants did not meet the length and width requirements of the Ordinance, this testimony did nor concern the revised parking plan submitted by the appellants, which appears to reflect the concerns of Mr. Henderson.