DECISION
R. E. Partnerships, Inc. and Pike Realty, LLC (collectively "Appellants") appeal from a decision of the Zoning Board of Review of the Town of Smithfield ("Board"), issued on February 16, 2006. The Board denied Appellants' request for a dimensional variance to construct two retail buildings on two nonconforming lots of record. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, this Court reverses the Zoning Board's decision, and grants Appellants' appeal.
 I Facts and Travel
Appellant R. E. Partnership Services, Inc. is the applicant and Appellant Pike Realty, LLC is the owner of real property, listed as Lots 22 and 26 on Tax Assessor's Plat 37 ("Property"), and located at 452 Putnam Pike in Smithfield, Rhode Island. (See Appellants' Variance Application.) Because the lots were in existence prior to the district's designation as a "Planned Development" ("PD") district, which required a 5-acre, or 200,000 square foot minimum lot size, the lots are deemed substandard or nonconforming by dimension.[1] The subject property, even after joining the two lots contains only 2.35 acres or 102,336 square feet. (Variance Application.)
R. E. Partnership Services, Inc. entered into a binding purchase agreement with the owner, Pike Realty, LLC, regarding the substandard lots — the site of a bowling alley and an adjacent lot — in December 2004.[2] Subsequently, Appellant Pike Realty, LLC demolished the bowling alley and R. E. Partnership Services, Inc. now plans to build a Land Development Project ("LDP") consisting of two retail stores on the Property. (Variance Application.)
On December 15, 2005, Appellants appeared before the Planning Board requesting Master Plan Approval for the entire development project of Lots 22 and 26. By a vote of 7 to 2, the Planning Board granted the Appellants' Master Plan Approval. On July 21, 2006, the Planning Board issued a written decision detailing their findings of fact:
 a) the proposed development is consistent with the comprehensive community plan;
 b) the proposed development is in compliance with the standards and provisions of the Smithfield Zoning Ordinance if the Zoning Board grants the variance to be requested;
 c) there will be no significant environmental impacts from the proposed development as shown on the Master Plan, with all required conditions for approval;
 d) the subdivision, as proposed, will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable; and
 e) all proposed land developments and all subdivision lots have adequate and permanent physical access to a public street.
(See Planning Board Resolution at 2, December 15, 2005.) Following this approval, Appellants applied to the Zoning Board of Review for a dimensional variance.[3]
Specifically, Appellants sought a dimensional variance for 2.24 acres to deviate from the minimum lot size of a PD district on December 27, 2005. (See id.; see also Board's January 25, 2006 Staff Report.) Appellants presented their LDP proposal to build two buildings on the property: (1) a Walgreens drugstore, comprising 14,280 square feet; and (2) a building for retail use, comprising 7,050 square feet. (Variance Application.) By comparison, the bowling alley which was previously located at the site, totaled 18,480 square feet.
The hearing before the Board was held on January 25, 2006. (Hr'g Tr. 1, Jan. 25, 2006.) At the hearing, counsel for R. E. Partnership Services, Inc., a real estate agent, and two civil engineers testified. (Id.) Appellants explained to the Board that the proposed retail buildings would conform to the general surroundings of the mostly commercial area. (Hr'g Tr. 15.) Appellants argued that the proposed buildings fell within the maximum lot coverage for a PD district because the building space constituted less than 25 percent of the lot size, leaving 75 percent of the lot undeveloped land. (See Town of Smithfield Land Development Ordinance, Section 5.4, Table 1; Hr'g Tr. 4.) Furthermore, REPS stated that the height dimensions conformed as well. (Id.)
Upon questioning from the Board, Appellants admitted that the contract with the lessee, Walgreens, was contingent upon the Department of Transportation's ("DOT") approval of a traffic light at the intersection of Commerce Street and Route 44 to facilitate access to the store. (Hr'g Tr. 5, 7.) Appellants informed the Board that the Planning Board "left open the question of the traffic signal" to be discussed at a later time. (Hr'g Tr. 5, 6.) When asked about a traffic study, Appellants responded that a draft of the traffic study was completed and the matter was under consideration by the Planning Board. (Hr'g Tr. 6.) In addition to the traffic study, the Appellants stated, the Planning Board requested an environmental impact statement for preliminary approval. (Hr'g Tr. 10.)
The matter was taken under advisement, and on February 16, 2006, the Board issued Resolution No. 06-008, denying the Appellants' request for a dimensional variance.[4] (See Board's Decision.) In rendering its decision, the Board made the following determinations:
 1. . . . [T]he hardship is not caused by the uniqueness of the lot, but by the applicant's proposal to overburden this property with an intense commercial use which would generate high volumes of traffic at an intersection already overburdened by heavy, congested traffic.
 2. . . . The applicant is creating its own hardship by proposing such an intense use at this site, one which would have a far greater impact on area traffic than the prior bowling alley. The applicant seeks to construct two buildings on this undersized parcel in an effort to maximize its financial gain.
 3. . . . The applicant failed to meet its burden of proof to show that this project would not have a negative impact on an already unacceptable traffic condition [on Route 44]. The applicant did not even present a traffic report to address this critical issue.
 4. . . . The applicant could have proposed a far less intense project that would have less of an impact on this traffic-congested area. It did not do so. Instead, it proposed to overdevelop the site with two commercial buildings that would leave the property with considerably less undeveloped area than is required in a PD zone.
 5. The Board finds . . . that evidence has not been entered into the record of the proceedings showing that the hardship that would be suffered by the owner of the subject property if the dimensional variance is not granted would amount to more than a mere inconvenience.
The Appellants took a timely appeal, asking this Court to reverse the Board's decision. Notice was adequately provided pursuant to §45-24-69.1.
 II Analysis A Standard of Review
The Superior Court has jurisdiction to review this appeal pursuant to G.L 1956 § 45-24-69(a). The Court's review of a zoning board decision is governed by § 45-24-69(d). Section 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." DeStefano v. Zoning Bd. ofReview of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)).
In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. Church Community HousingCorp., 672 A.2d 453, 454 (R.I. 1996) (quoting Section 45-24-69(d)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. Of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). Regarding questions of law, however, this Court conducts a de novo review; consequently, the Court may remand the case for further proceedings or potentially vacate the decision of the Board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." Von Bernuth v. Zoning Bd.of Review, 770 A.2d 396, 399 (R.I. 2001) (see also G.L.1956 §45-24-69(d)(5)).
With respect to dimensional variances, Section 45-24-41 provides in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that:. . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. The zoning board of review has the power to grant dimensional variances where the use is permitted by special use permit if provided for in the special use permit sections of the zoning ordinance."
Pursuant to § 45-24-41, "for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience."Lischio, 818 A.2d at 691.
 B Content of Zoning Board Decision
At the outset, Appellants raised the issue of whether the Zoning Board properly complied with the requirements of § 45-24-61 in rendering its decision because the transcript does not contain the Board's deliberations in reaching its decision. However, Appellants suggest that the point is moot because the Board lacked jurisdiction even to consider the matter. For purposes of discussion and completeness, this Court reviews the Board's compliance with § 45-24-61.
Section 45-24-61 of the Rhode Island General Laws states that a zoning board "shall include in its decision all findings of fact and conditions, [and] showing the vote of each participating member." Section 45-24-61 does not require the board to include its deliberations. Essentially, the decision should include sufficient information "to give the parties, the public, and a reviewing court a clear understanding of the factual as well as the legal basis for the ultimate judgment. It must include all findings of fact and conditions, and must show the vote of each member." Roland F. Chase, Rhode IslandZoning Handbook § 96 (1993). Furthermore, our Supreme Court has held that
 "[t]he issue here, however, is not the form, but the content of the decision; and what we must decide is whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible."
Zammarelli v. Beattie, 459 A.2d 951, 953 (R.I. 1983) (quotingMay-Day Realty Corp. v. Board of Appeals, 107 R.I. 235, 239,267 A.2d 400, 403 (R.I. 1970)).
Appellants claim that they have a right to be privy to the Board's discussion in reaching its final decision. However, the law does not require it. So long as the Board renders a decision complete with findings of fact and conclusions of law which are specifically tailored to the issue before it, the Court may review the decision.
The hearing was held on January 25, 2006. The Board, upon motion took the matter under advisement, and published a written resolution on February 16, 2006. In its decision, the Board stated that it denied Appellants' request for a variance based on the fact that Appellants sought to construct two buildings on the undersized property, and the Board considered this proposal "too intensive" a use. Furthermore, the Board found that the LDP would have a "negative impact on an already unacceptable traffic condition." For those reasons, the Board denied the request for dimensional relief. This Court finds that the Board made sufficient "findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." von Bernuth v. Zoning Bd. of Review, 770 A.2d 396, 401 (R.I. 2001).
 C Jurisdiction
Appellants assert that the Board lacked subject matter jurisdiction to hear this issue and to determine whether or not to grant a dimensional variance.[5] Specifically, Appellants contend that the Board lacked jurisdiction because Appellants, as a matter of law, are permitted to use the undersized property for retail sales buildings between 5,000 and 40,000 square feet, in accordance with the Town of Smithfield's Table of Uses for Planned Development Districts. (See Appellants' Mem. 5-6, May 16, 2006 (hereinafter "Appellant's Mem.")); (see also Ordinance, sec. 4.3, Table of Uses.) The Town rebuts these arguments stating that "a building must meet all dimensional regulations of the Zoning Ordinance in order for it to be conforming." (See Town's Reply Mem. at 3 (citing G.L. 1956 § 45-24-31 (49).) Notably, the Land Development Ordinance requires a minimum area of two hundred thousand (200,000) square feet in a Planned Development Area. (Ordinance, sec. 5.7.1(c).) Since the lot area of the combined two lots falls well below the requisite lot size in a PD district, the Town maintains, Appellants were required to seek a variance for dimensional relief from the Board.
Both parties submit that the proposal is subject to the regulations in Article III of the Smithfield Zoning Ordinance, which protects and regulates a nonconformance, or a "dimension, building, structure, sign, or parcel of land" lawfully existing before the passage of this Ordinance, which is made nonconforming by the new restrictions. (Ordinance, sec. 3.1; see also Rhode Island Zoning Act, G.L. 1956 §45-24-39(a).) This Property qualifies as nonconformance, so it receives protection under Article III of the Ordinance.[6]
The Enabling Statute defines "nonconforming by dimension" as follows:
 "a building, structure, or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance is nonconforming by use; a building or structure containing a permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, is nonconforming by dimension."
(Section 45-34-21(49)(ii) (emphasis added).) "Dimensional variances 
merely allow a relaxation of one or more of the regulations under which a permitted use may be exercised, such as building height, setbacks, and parking regulations." (Chase, supra, at sec. 158.) Significantly, the Smithfield Zoning Ordinance further divides the category into two subparts: Section 3.9, "Building or structure nonconforming by dimension," and Section 3.11, "Land nonconforming by area."[7] Upon review of these titles and sections, this Court finds that the Town of Smithfield intended to regulate separately, buildings and structures which are nonconforming, from parcels of land which fail to meet the minimum lot size in a designated district. In effect, Section 3.11, "Land nonconforming by area" parallels other town ordinances with delineated sections for "substandard lots of record." (See Ordinance, Sec. 3.4) ("[a] lawfully established lot that is not in compliance with the dimensional requirements of the Zoning Ordinance, including, but not limited to those regulations for minimum lot size, lot width and lot frontage, (also known as a substandard lot of record) is also nonconforming by dimension.")
Appellants contend that sec. 3.11(c), in particular, is applicable:
 "[f]or lawfully established lots with contiguous frontage in single ownership which are located in the V, C, HC, LI, I, PCD and PD zones, if all or part of the lots do not meet the requirements established for lot width, frontage or area, the lots need — not be merged together. They may be separately transferred and/or developed provided however, that such development must meet all dimensional requirements (other than lot width, frontage, or area) and floor area ratio requirements of this Ordinance." (Emphasis added.)
Section 3.11(c) does not mandate merger by operation of law in non-residential districts,[8] despite the fact that most towns "require the combination of two or more contiguous lots of substandard size that are held in common ownership in order to meet the minimum-square-footage requirements of a particular zoned district."R.J.E.P. Assocs. v. Hellewell, 560 A.2d 353, 355 (R.I. 1989).
However, by their actions, Appellants may have joined the lots in order to create their LDP proposal. An LDP is unique in that it allows more than one structure to be built on a single lot. An LDP is considered "planned development" so long as it is "developed according to plan as a single entity and containing one or more structures and/or uses with appurtenant common areas." (Section 45-24-31(53).) The Master Plan submission evidences that Appellants intended both retail stores to be within one development. The proposed buildings share a common entrance, a truck-only exit, parking spaces, and landscaping. (See Appellants' Master Plan; G.L. 1956 § 45-24-31(37).) Furthermore, the only way for
Appellants to meet the required setbacks and coverage requirements is to place both buildings in part on the larger lot, Lot 26. Appellants demonstrated their intent to merge the two lots when they applied to the Board for a variance, stating "[t]he lot size is achieved by joining two pre-existing substandard lots" and "[t]he existing lot is 2.35 acres." (Variance Application.) In light of this evidence, this Court finds that Appellants merged Lots 22 and 26. Nonetheless, the merged lot size falls short of the five acre requirement in a Planned Development district; therefore, the Property remains nonconforming by dimension.
Appellants rely further on Section 3.11(c), for the position that they may develop this substandard lot without first obtaining a dimensional variance from the Board. Appellants emphasize the text in Section 3.11(c), which states that lawfully established substandard lots under single ownership "need not be merged together"; further, "[t]hey may bedeveloped, provided however, that such development must meet alldimensional requirements (other than lot width, frontage, or area) andfloor area ratio requirements of this Ordinance."[9] (Emphasis added.) Thus, Appellants contend that the variance requirement is waived for lawfully established nonconforming lots — which fail to meet the lot area, lot width, and frontage requirement — so long as all other dimensional requirements (i.e. height, setback, and coverage) are satisfied.
With respect to satisfying the requirements for a Planned Development area, Appellants maintain that the proposed buildings' height, floor area ratio, and other dimensions besides lot width, area, and coverage are conforming. (Hr'g Tr. 4.) The floor area ratio is defined in the Ordinance as "the GFA (gross floor area) of any building or buildings on a lot, divided by the area of said lot."[10] (Ordinance, sec. 2.2 (63).) Appellants proposed buildings constitute only 21,330 square feet, less than 25 percent of the total lot size, 102,336 square feet. (Id.; see also sec. 5.4, Table 1.) The height of the building conforms because it is less than the specified 39 feet. (Hr'g Tr. 4.)
In sum, Appellants claim that they are only required to seek permission from the Planning Board under the Ordinance: Section 5.7.1(A) states that "[a]ll Planned Development applications shall require Planning Board approval." Appellants argue that they already obtained the necessary Master Plan approval from the Planning Board. (See Planning Board Resolution.) Appellants admit that they applied to the Zoning Board for a dimensional variance after receiving Master Plan approval from the Planning Board; however, they now argue that this step was unnecessary. (See Appellants' Mem. at 2, 6.)
Conversely, with respect to the pertinent provision, Section 3.11, "Land nonconforming by area," the Town asserts that it applies solely to lawfully established undeveloped substandard lots of record. (See Town's Mem. at 5.) According to the Town, Appellant's act of demolishing the bowling alley does not transform a developed lot into an undeveloped lot. (Id.) Thus, at issue is whether Section 3.11(c) allows owners of two lawfully established substandard lots of record to develop the land without first obtaining a dimensional variance from the Zoning Board.
It is well-established in Rhode Island that "the rules of statutory construction apply equally to the construction of an ordinance."Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981). In construing Section 3.11(c), the Court must give effect to its plain and ordinary meaning. See Jeff Anthony Props. v. Zoning Bd. of Review, 853 A.2d 1226,1230 (R.I. 2004); see also Accent Store Design, Inc. v. MarathonHouse, 674 A.2d 1223, 1226 (R.I. 1993). In reviewing Section 3.11(c) — by gleaning the intent of the drafters, analyzing the section on nonconformance as a whole, and in keeping with the Town's general comprehensive plan — "this court will not construe a statute to reach an absurd result." Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996) (citing Beaudoin v. Petit, 122 R.I. 469, 476, 409 A.2d 536, 540 (1979)).
Ostensibly, Section 3.11(c) refers solely to the merger of substandard lots. However, the Zoning Enabling Act requires towns to "regulate the use or uses of any single substandard lot of record or contiguous lots of record at the effective date of adoption or amendment of the zoning ordinance notwithstanding the failure of that lot or those lots to meet the dimensional and/or quantitative requirements. . . ." (G.L. 1956 § 45-24-38.) Although Section 3.11(c) references only undersized lots which are separately developed, the same law must apply to merged lots which remain undersized. To find otherwise, would punish property owners for merging lots.
This Court notes that many ordinances require merger of contiguous substandard lots in single ownership in commercial districts. In fact, the general purpose of merger provisions is "to decrease congestion in the streets and to prevent the overcrowding of land. . . ." Brum v.Conley, 572 A.2d 1332, 1334 (R.I. 1990). However, the Smithfield Ordinance does not require merger of contiguous, substandard lots under the same ownership in commercial areas.[11]
This Court is "required to resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use [his or] her property as [he or] she wishes." Denomme v.Mowry, 557 A.2d 1229, 1231 (R.I. 1989); see also City of Providence v.O'Neill, 445 A.2d 290, 293 (R.I. 1982). The Zoning Enabling Act describes a variance as "[a]n application for relief from the literal requirements of a zoning ordinance"; however, here, Appellants seek to conform to the literal requirements of Section 3.11(c), and thus, do not need to seek variance relief. (See § 45-24-41.) This Court construes Section 3.11(c) to create an exception, whether intended or not, for the protection of substandard lots of record in a PD district, which allows landowners to build on them without seeking a dimensional variance, so long as all dimensions are in compliance with the Ordinance other than lot area, lot width, or frontage. (See generally Edward H. Ziegler,Rathkopf's The Law of Zoning and Planning, § 49:25 (Thomson/West 2006) ("[u]nless the zoning ordinance provides otherwise, the owner of a substandard lot that qualifies under an exemption provision may be entitled to build on the lot without otherwise demonstrating that he or she has vested rights or that the standards necessary for a variance are satisfied.").) As a general rule, ordinances will create exceptions for owners to develop a lawfully established substandard lot of record in single ownership. See R.J.E.P. Assocs. v. Hellewell, 560 A.2d 353, 356
(R.I. 1989).
At the same time, the Ordinance does provide safeguards to protect against the consequential problems described in the purpose statement. For instance, tables outline which uses may be permitted as a matter of right in a PD district; which uses are not allowed; and which uses require a special use permit. Appellants correctly state that their LDP, which is categorized as "Retail buildings comprising 5,000 to 40,000 square feet," is allowed as a matter of law in a PD district. On the other hand, a bowling alley is only permitted by way of a special use permit. Therefore, Appellants tore down a bowling alley with plans to build a conforming use. Moreover, the land owners must receive prior approval from the Planning Board as well as any other approval, i.e. permission from DOT for a traffic light. Finally, Section 3.11(c) provides an exception to the variance requirement, so long as all other dimensional requirements are satisfied other than lot width, area, and frontage.
Accordingly, this Court finds that Appellants' application for a variance was not properly before the Smithfield Zoning Board since the Board was without jurisdiction to review it. See generallyCavanaugh v. Cavanaugh, 118 R.I. 608, 616, 375 A.2d 911, 914 (1977). For these reasons, the decision of the Zoning Board is reversed.
 Conclusion
Upon review of the entire record as a whole, this Court finds that the Zoning Board exceeded its statutory authority by reviewing this matter. The Appellants are permitted to build in a PD district without a variance, so long as all other requirements, other than lot area, lot width, and frontage are satisfied. Substantial rights of the Appellants have been prejudiced. Counsel shall submit an appropriate order consistent with this opinion.
[1] The Town of Smithfield Land Development Zoning Ordinance ("Ordinance") Section 5.4, Table 1 sets forth the minimum standard for lot size in a PD district, namely, 5 acres or 200,000 square feet. (See also Section 5.7.1(c) ("The minimum area of any Planned Area shall be not less than two hundred thousand (200,000) square feet, calculated in accordance with § 5.3.1.").)
[2] Pike Realty, LLC owns the "lawfully established" substandard lots, meaning that they "[were] in existence prior to May 6, 1947, or established in conformance with the Zoning Ordinance in effect at the time the use was first established." (Ordinance, Section 3.2.)
[3] Counsel who represented R. E. Partnership Services, Inc. throughout the Planning Board and Zoning Board review was subsequently replaced by current counsel.
[4] Pursuant to G.L. § 45-24-57 (2) (iii) "[t]he concurring vote of four (4) of the five (5) members of the zoning board of review sitting at a hearing are required to decide in favor of an applicant on any matter within the discretion of the board upon which it is required to pass under the ordinance, including variances and special — use permits." Here, two Board members voted to grant the variance while three Board members voted against granting the requested relief.
[5] Although not raised by Appellants initially, a party may raise the issue of lack of subject matter jurisdiction at any time. SeePollard v. Acer Group, 870 A.2d 429 (R.I. 2005); LaPetite Auberge, Inc.v. Rhode Island Commission for Human Rights, 419 A.2d 274, 280
(R.I. 1980); see also Rule 12(b)(1) of the Superior Court Rules of Civil Procedure.
[6] "The term "nonconforming" is a word of art in zoning law and indicates a use that preceded and is not subject to a later-adopted zoning ordinance." (Chase, supra at § 86 (citing Hugas Corp. v.Veader, 456 A.3d 765 (R.I. 1983)).)
[7] See Table of Contents for further clarification: Section 3.8, "Building or structure nonconforming by use"; Section 3.9, "Building or structure nonconforming by dimension"; Section 3.10, "Land nonconforming by use"; and Section 3.11, "Land nonconforming by area."
[8] Section 3.11(d) does require merger of residential lots which do not meet the requirements for lot width, frontage, or area.
[9] Section 2.2(99) defines "lot width" as "[t]he horizontal distance between the side lines of a lot measured at right angles to its depth along a straight line parallel to the front line at the minimum frontsetback line." Section 2.2(65) defines "frontage" as "[t]hat portion of a lot abutting a street and measured along the street line on which thelot fronts; or in the case of a corner lot, along either street line from the side or rear lot line to the point of intersection of the abutting street lines.
[10] The GFA is defined as "[t]he sum of the gross horizontal area of the several floors of a building measured from the exterior face of exterior walls, but not including interior parking spaces, loading spaces for motor vehicles, or any space where the floor to ceiling height is less than seven (7) feet. Section 2.2 (68).
[11] This may be because the Town of Smithfield desires to preserve as many buildable commercial lots as possible to help reduce the tax burden on residential property owners.